RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 19-2071

*v.*

PHILIP GORDON PAAUWE,

*Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00041-1—Paul Lewis Maloney, District Judge.

Decided and Filed: August 4, 2020

Before: NORRIS, NALBANDIAN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Steven D. Jaeger, THE JAEGER FIRM, PLLC, Erlanger, Kentucky, for Appellant. Davin M. Reust, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge. Philip Paauwe was sentenced to a 420-month prison term following his guilty plea to Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). The sentencing analysis included application of a five-level enhancement under § 4B1.5(b)(1) of the Sentencing Guidelines due to Paauwe's pattern of ongoing sexual misconduct. Paauwe argues that application of the enhancement was based on the Guideline's

administrative commentary, not its text, in violation of our recent holding in *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam).   Because Paauwe's enhancement follows from the plain terms of the Guideline itself, we **AFFIRM** the judgment of the district court.

## BACKGROUND

Upon completing his military service and earning a teaching degree, Paauwe began working as an elementary school teacher for special needs children.  Unfortunately, his interest in children with special needs had a deviant dimension.

For more than two years, Paauwe engaged in an online relationship with G.L., an underage special needs girl living several states away.  Beginning when G.L. was fifteen years old, Paauwe set forth "rules," some of which involved sexual acts, by which G.L. had to live her life.  When G.L. failed to abide by the "rules," Paauwe would manipulate her into inflicting "punishment" on herself through various means of self-harm, including cutting herself, sending Paauwe video recordings as proof.  Paauwe also described to G.L. his desire to sexually abuse a student.  Things took an even darker turn when Paauwe expressed to G.L. his fantasies about murdering a child.

Over the course of the relationship, Paauwe amassed a collection of child pornography depicting G.L.  He also recorded an illicit video of a student along with videos of himself masturbating on a school desk and in the school parking lot.

Paauwe's clandestine activities eventually came to light when he responded to an undercover officer's sex-related social media post.  Using a pseudonym, Paauwe expressed disturbing views about incest and bestiality.  The two then struck up an ongoing conversation in private messages across multiple social media and messaging platforms.  Paauwe routinely expressed in graphic terms his sexual interest in and intentions for the officer's fictional thirteen-year-old daughter.  Paauwe even went so far as to attempt to set up a meeting between the three, at which point the officer served an administrative subpoena on Paauwe's internet service provider to obtain his name and address.

When officers went to Paauwe's home to interview him, Paauwe admitted that he struggled with sexual urges toward girls as young as fourteen. Paauwe also admitted to viewing child pornography on his cellphone. With Paauwe's cooperation, officers discovered on his cellphone images of child pornography.

During a second interview, Paauwe admitted that he procured the images in an online chatroom. A more in-depth search of Paauwe's phone revealed several additional images of child pornography, some depicting children as young as five engaged in sex acts with adults. Paauwe also admitted that he had an ongoing online relationship with G.L. and that he possessed nude photos of her. The officers then interviewed G.L. She described Paauwe's long-running sexual crimes inflicted upon her. Officers also discovered lascivious images and videos on G.L.'s phone recorded and sent at Paauwe's urging.

Paauwe was indicted in federal court on five counts: (1) Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); (2) Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) and (e); (3) Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); (4) Attempted Coercion and Enticement, in violation of 18 U.S.C. § 2422(b); and (5) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). In exchange for Paauwe's guilty plea to Count One, the government dismissed the remaining charges.

The Presentence Report computed Paauwe's offense level as 42 and assigned him criminal history category I, resulting in a Sentencing Guidelines range of 360 months to life imprisonment. As relevant here, Paauwe objected to the imposition of a five-level sentencing enhancement for "engag[ing] in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1). Paauwe argued that the Guideline's title—"Repeat and Dangerous Sex Offender Against Minors"—expressly contemplates offenses against multiple minors, making it inapplicable to Paauwe, who abused only G.L. In so doing, Paauwe acknowledged that Application Note 4(B)(i) to § 4B1.5(b)(1) indicates that the Guideline applies to a defendant who engages in prohibited sexual conduct with a single minor. He likewise acknowledged that our precedents have squarely rejected his argument. *See, e.g.*, *United States v. Brown*, 634 F. App'x 477, 482 (6th Cir. 2015) (citing *United States v. Brattain*, 539 F.3d 445, 448 (6th Cir. 2008)).

Yet, he maintained, those holdings are no longer controlling in light of our en banc decision in *Havis*, 927 F.3d at 386, which held that an application note may not expand a Guideline's scope.

The district court overruled Paauwe's objection. It held that even if the application note did expand § 4B1.5(b)(1), *Havis* was inapplicable because Congress itself adopted the application note as part of its amendments to the Guideline. *See Brattain*, 539 F.3d at 448 (quoting H.R. Conf. Rep. No. 108-66, at 59 (2003)). The district court therefore applied the five-level § 4B1.5(b)(1) enhancement and sentenced Paauwe to 420 months' imprisonment. This appeal followed.

## ANALYSIS

In taking this appeal, Paauwe admits the relevant facts, most notably, that he was engaged in an online abusive sexual relationship with G.L. for years, which included procuring nude photographs from her. His appeal thus turns on a question of law: whether the § 4B1.5(b)(1) enhancement applies to a defendant whose prohibited sexual conduct involved only one victim.

A challenge to the enhancement is in essence a challenge to the district court's computation of Paauwe's advisory Guidelines range. When a district court improperly calculates the Guidelines range, the ensuing sentence is considered procedurally unreasonable. *See United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review de novo the district court's application of the Guidelines to its factual findings. *United States v. Benton*, 957 F.3d 696, 700–01 (6th Cir. 2020).

1. To determine a Guideline's scope, we begin, as always, with its text. *Havis*, 927 F.3d at 387. By its terms, § 4B1.5(b)(1) applies to one who "engage[s] in a pattern of activity involving prohibited sexual conduct," so long as the defendant's present offense is a covered sex crime and the defendant has neither been previously convicted of a sex offense nor qualifies for a career offender enhancement under § 4B1.1. With Paauwe conceding he satisfies the final three criteria, the lone issue for resolution is whether § 4B1.5's "Repeat and Dangerous Sex Offender Against Minors" heading limits the Guideline's application to those who victimize multiple minors.

The Guideline's text indicates otherwise. Paauwe's conduct qualifies as "a pattern of activity involving prohibited sexual conduct." § 4B1.5(b). The essence of a "pattern of activity" is conduct that is both repeated and related. *See Pattern*, Merriam-Webster (Online ed. 2020) ("[T]he regular and repeated way in which something is done[.]"). True, as Paauwe notes, a pattern of activity could well encompass more than one victim. A robber might rob multiple banks over a course of time. But it could just as well involve multiple robberies of the same bank over time. The latter is just as much a pattern as the former. *See United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019) (finding that defendant's abuse of the same minor on two separate occasions constituted a "pattern of activity involving prohibited sexual conduct"). And there is no doubt Paauwe's pattern of activity involved "prohibited sexual conduct." Indeed, Paauwe concedes as much in his brief, relying solely on the multiple-victims distinction for his argument on appeal.

We previously accepted this straightforward reading of § 4B1.5(b)(1) in *Brattain*, 539 F.3d at 448. There, as here, we considered the defendant's argument that § 4B1.5(b)(1) did not apply to his series of offenses against a single victim. *Id.* We rejected that argument on multiple grounds, including on the textual basis that "the plain language of § 4B1.5(b)(1) . . . [applies] to defendants who abuse only a single victim." *Id.* As the text of the Guideline has not changed since *Brattain*, we see no reason to revisit its reasoning.

All of this, moreover, accords with the instructions in Application Note 4(B)(i). That application note states that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." While we can fairly reach our conclusion today without reliance upon the application note, its consistency with the Guideline's text gives it controlling force. *See United States v. Buchanan*, 933 F.3d 501, 514 n.2 (6th Cir. 2019) ("Because application note 2 to § 4B1.3 explains the meaning of 'engaged in as a livelihood' in a way that the text of the Guidelines provision will bear . . . the application note is binding on federal courts under *Stinson* and *Havis*."); *United States v. Hollon*, 948 F.3d 753, 757 (6th Cir. 2020) (We are bound to "treat [application note 4(B)(i)'s] commentary to the Guidelines as authoritative.") (quoting *United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005)).

2. Resisting this conclusion, Paauwe insists we must revisit *Brattain*'s holding in light of our recent en banc decision in *Havis*. *See, e.g.*, *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016) (recognizing that intervening authority allows a panel to revisit a previously decided question). We thus turn to *Havis* now.

*Havis* articulated an important principle of administrative law as applied in the context of criminal sentencing practices. As our unanimous en banc Court explained, a Guideline's administrative commentary may not expand the scope of the Guideline beyond its plain text. *Havis*, 927 F.3d at 386 (citing *Stinson v. United States*, 508 U.S. 36, 46 (1993)). That is so because a Guideline's commentary, unlike its text, ordinarily does not run "the gauntlets of congressional review or notice and comment," meaning that the commentary, to honor "separation of powers" concerns, "has no independent legal force." *Id.*

As important as that principle remains, it is inapplicable when, as here, the Guideline's text fully supports application of the enhancement. In enhancing the sentence of one engaged in a "pattern of activity," § 4B1.5 took aim at multiplicity in acts, not multiplicity in victims. That is so even where, as Paauwe emphasizes, § 4B1.5's title heading refers to "minors." After all, we understandably defer to the Guideline's text, rather than its heading, when portions of the Guideline's text cut against the "interpretation" offered by the title. *See United States v. Robinson*, 152 F.3d 507, 510 (6th Cir. 1998); *United States v. Bryant*, 987 F.2d 1225, 1229 n.4 (6th Cir. 1992); *United States v. Gresser*, 935 F.2d 96, 102–03 (6th Cir. 1991).

Nor, in any event, is Paauwe's reading of § 4B1.5's title heading consistent with traditional means for interpreting legal text. The use of a plural noun, here "minors," typically does not exclude the singular version of that noun, unless the provision explicitly says otherwise. *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 742 (2017) (citing 1 U.S.C. § 1 (instructing that when reading federal law "words importing the plural include the singular")); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 129–30 (2012). Which, as just explained, it does not. A straight-forward reading of the Guideline's text thus forecloses Paauwe's interpretation.

At day's end, *Brattain* together with § 4B1.5's plain language make clear that a pattern of sexual misconduct against a single minor is sufficient for the enhancement. And because Paauwe conceded the other requirements of § 4B1.5, the district court properly applied the enhancement.

3. While reaching the same outcome, the district court, we note, resolved the issue on a different ground. That Congress expressly adopted Application Note 4(B)(i), the district court held, distinguished the application note here from the one at issue in *Havis*. True enough, commentary by the Sentencing Commission that expands a Guideline's scope is problematic because it is neither approved by Congress nor subject to notice and comment rulemaking. *Havis*, 927 F.3d at 386. The present version of Application Note 4(B)(i), however, was adopted by Congress. *See Brattain*, 539 F.3d at 448 ("In an effort to broaden § 4B1.5(b)(1)'s scope to include defendants who repeatedly abuse the same victim on separate occasions, Congress amended the Application Note 4(B)(i) to eliminate the requirement of at least two minor victims in order for the enhancement under § 4B1.5(b)(1) to apply.") (cleaned up). In that sense, the concerns expressed in *Havis* do not resonate here.

Yet Application Note 4(B)(i)'s pedigree raises interesting questions in its own right. On the one hand, where Congress both enacts a provision and interprets it, those parallel efforts arguably combine the powers of creating and interpreting law, which "contravenes one of the great rules of separation of powers: He who writes a law must not adjudge its violation." *See Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 621 (2013) (Scalia, J., concurring in part and dissenting in part). On the other hand, Congress's action may allay one's fair concern over administrative agencies both issuing and then interpreting their own rules and actions. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2421 (2019). In Application Note 4(B)(i), it bears mentioning, Congress stepped in to amend previously problematic Guidelines and commentary, a paradigmatic example of congressional oversight. But as Paauwe's argument here fails from a plain reading of § 4B1.5's text, we need not rely on the Guideline commentary in resolving today's case. And so we need not definitively resolve any questions over Congress's authority to influence a Guideline's scope through application notes it (rather than the Sentencing Commission) enacts.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.