RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

CONDARIUS DESHUN TRIPPLET,

        *Defendant-Appellant*.

No. 23-1676

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cr-00161-1—Robert J. Jonker, District Judge.

Decided and Filed:  August 12, 2024

Before:  MOORE, MURPHY, and BLOOMEKATZ, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant.  John J. Schoettle, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

    BLOOMEKATZ, J., delivered the opinion of the court in which MOORE, J., joined in full.  MURPHY, J. (pp. 8–10), delivered a separate opinion concurring in part and in the judgment.

_____

### OPINION

_____

    BLOOMEKATZ, Circuit Judge.  In 2022, Condarius Tripplet pleaded guilty to possession with intent to distribute controlled substances.  The district court sentenced Tripplet to 188 months' imprisonment.  He now appeals, contesting the court's application of a drug-

premises enhancement. This enhancement adds two levels to the base offense level when a defendant maintains "a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing" drugs. U.S. Sent'g Comm'n Guidelines Manual (U.S.S.G.) § 2D1.1(b)(12). Tripplet acknowledges he maintained an apartment but disputes that its primary use was for drug distribution, noting that he lived there with his then-girlfriend and her two children. However, our precedent clarifies that the defendant need not maintain the premises only for drug operations; if drug manufacture or distribution is one of the primary or principal uses of the residence, the enhancement may apply. Given the undisputed findings that Tripplet had a significant quantity of various illegal drugs, thousands of dollars in cash, a firearm, and drug manufacturing tools in the residence, and that he regularly distributed drugs to customers from this residence, we affirm the district court's decision to apply the enhancement.

## BACKGROUND

In July 2021, an undercover officer conducting a narcotics investigation purchased drugs from a dealer connected to Condarius Tripplet. Following the sale, the dealer traveled to an apartment complex in Benton Harbor, Michigan, and disappeared inside. The dealer reemerged with a quantity of fentanyl he then delivered to the undercover officer. Over a year later, on October 6, 2022, case agents organized a second transaction. A confidential informant placed an order with a different dealer who traveled to the same apartment building. Investigators tracked the dealer as he ducked into one of the apartments, then emerged to hand methamphetamine to the confidential informant. Officers discovered the apartment was leased to Tripplet's girlfriend, Andrea Singleton, who appeared to live there with Tripplet.

A month later, officers executed two more controlled buys. The third buy took place on November 2, 2022, and the fourth occurred on November 8, 2022. Like the first two deals, both the third and fourth involved a confidential informant buying the drugs from an intermediary who would travel to Tripplet's apartment and reemerge to hand the drugs to the confidential informant. On the third buy, officers observed Tripplet exit his apartment and hand drugs to the intermediary. After the fourth buy, officers obtained and executed a search warrant at Tripplet's apartment.

During their search, officers recovered substantial quantities of narcotics from the apartment: 1,244 grams of methamphetamine, 334 grams of fentanyl, 463 grams of cocaine, and 54 grams of crack cocaine.  Additionally, they discovered two blenders with traces of cocaine powder and fentanyl.  Investigators discovered a loaded .40 caliber handgun and ammunition in the kitchen, along with a total of $5,645 in cash stashed throughout the residence.  In executing the search warrant, authorities encountered Tripplet and Singleton inside Tripplet's car, which was located near the apartment.  Officers arrested Tripplet and Singleton and recovered $7,238 from the vehicle.

On November 30, 2022, a grand jury indicted Tripplet on two counts: (1) possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), and (2) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Under the terms of the plea deal, Tripplet pleaded guilty to only the first count.

During the sentencing phase, prosecutors requested the district court set an offense level of 33, corresponding to a Guidelines range of 235 to 293 months' imprisonment.  The district court calculated this number by starting with the 32-point base offense level, adding 4 levels for two separate two-point enhancements, then reducing by 3 levels because Tripplet accepted responsibility.  This proposal matched the recommendation in the presentence report.

Tripplet objected.  He argued that his offense level should be adjusted to 31, which corresponds to a range of 188 to 235 months in prison.  The difference hinged on the applicability of U.S.S.G. § 2D1.1(b)(12), which carries a two-level enhancement if a defendant "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution."  U.S.S.G. § 2D1.1 cmt. n.17.  Tripplet argued that the drug-premises enhancement was intended for more serious conduct, such as when a defendant runs a "classic" drug house "that really has no other purpose except to serve as a place where people can buy and use drugs or commit other crimes there."  Sent'g Tr., R. 44, PageID 202.  Given that Tripplet shared the apartment with his girlfriend and her two young children, he said the evidence failed to demonstrate that the primary purpose of maintaining the residence was drug manufacturing and distribution.

The district court overruled the objection. It justified the enhancement by citing several factors: the large drug quantity, the fact that a "significant portion of the living area [was] devoted to some aspect of drug dealing, whether concealment or otherwise," the "use of [the blenders]," and the observation that drugs were "out in the open in a household with children, and actually in the kitchen getting [] made up for sale." *Id.* at PageID 206–07. In the district court's view, applying the two-level increase to Tripplet's sentence fulfilled the objectives of the enhancement because Tripplet "expose[d] the people there and then the people in the neighborhood to the kinds of risks that go with drug dealing, both violence as well as vagrancy or other problems that might come from addicts in the area." *Id.* And while Tripplet and his family lived in the apartment, the district court explained "[i]t's possible to have more than one princip[al] purpose or important purpose in using a property." *Id.* at PageID 207.

With the enhancement, the court calculated a Guidelines range of 235 to 293 months. The court then varied downward based on its analysis of the 18 U.S.C. § 3553(a) factors, ultimately sentencing Tripplet to 188 months of imprisonment—the lowest Guidelines sentence had the court not applied the drug-house enhancement. Tripplet appealed.

## ANALYSIS

Tripplet challenges his sentence on a single issue—whether the district court correctly applied the drug-premises enhancement. Given that the undisputed evidence suggests Tripplet routinely conducted drug business from his home, including conducting drug transactions out of the home and storing drugs and proceeds there, we affirm the decision.

## I.      Standard of Review

We consider Tripplet's challenge to the application of the drug-premises enhancement a challenge to the procedural reasonableness of his sentence. *See United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023). While we generally review procedural reasonableness questions for an abuse of discretion, sentencing enhancements come with their own standards of review. With respect to the drug-premises enhancement, we review the factual determinations underpinning the application of an enhancement for clear error. *United States v. Terry*, 83 F.4th 1039, 1040–

41 (6th Cir. 2023). Then we review legal interpretations of relevant legal texts de novo. *Id.*; *United States v. Rich*, 14 F.4th 489, 495 (6th Cir. 2021).

For this appeal, Tripplet does not challenge the facts, so we accept them as the district court found them. Tripplet's legal argument it is sparse (at best three pages), but he contends based on the legal standard for U.S.S.G. § 2D1.1(b)(12) and our precedents applying it that the facts of his case are insufficient to support the enhancement. Through our precedents, we have developed benchmarks to understand what set of facts suffices for applying the drug-premises-enhancement. For example, our caselaw gives parameters for the quantity of drugs that must be stored and the frequency of transactions that give rise to the inference that a defendant maintained the premises for "the purpose of" selling or manufacturing drugs. *Id.*; *see* e.*g.*, *Terry*, 83 F.4th at 1041–43. Evaluating sentencing challenges based on precedent and these benchmarks facilitates equal application of the enhancement. And Tripplet contends that the district court's decision to apply the premises enhancement, given the uncontested facts, contravenes our precedent interpreting it. Accordingly, our review here "only involves interpreting the Guidelines and applying them to uncontested facts," *Rich*, 14 F.4th at 495 (citing *United States v. Paauwe*, 968 F.3d 614, 617 (6th Cir. 2020)), which includes "comparing accepted facts in the case before us with the facts of various precedents," *Terry*, 83 F.4th at 1041. And for this inquiry, "our review is do novo." *Rich*, 14 F.4th at 495; *see also Terry*, 83 F.4th at 1041 (applying "fresh review").

## II.    Application of the Drug-Premises Enhancement

The drug-premises enhancement applies if Tripplet "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The Sentencing Guidelines commentary clarifies that drug operations do not need to be the "sole purpose" of the premises, even though the text could arguably be read that way. It explains:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the *defendant's primary or principal uses for the premises*, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for

manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n.17 (emphasis added). Therefore, even if a defendant resides at the premises, so long as one of the principal uses of the spaces is also distributing or manufacturing illegal drugs—and drug operations are not "incidental or collateral" to the residence—the district court can apply the enhancement. *United States v. Bell*, 766 F. 3d 634, 637 (6th Cir. 2014).[1]

"The more the home looks like a business—due to the presence of, say, manufacturing equipment, cash, weapons, and customers or employees," the more likely we are to uphold the district court's application of the enhancement. *United States v. Hagan*, 766 F. App'x 356, 359 (6th Cir. 2019); *see also United States v. McFarland*, No. 20-5310, 2021 WL 7367157, at *8 (6th Cir. Oct. 4, 2021) (noting "drug-distribution paraphernalia, weapons, and cash . . . . in a locked bedroom with a key only [defendant] possessed"); *United States v. Broadnax*, 777 F. App'x 137, 142 (6th Cir. 2019) (noting that defendant, who sold marijuana by the pound, directed customers to the premises for pickups); *Bell*, 766 F.3d at 637 (noting that investigators recovered tools of the trade, including a "digital scale, drug-packaging materials, and police scanners" and the defendant "cooked the cocaine in the kitchen"); *United States v. Gardner*, 32 F.4th 504, 526 (6th Cir. 2022) (noting that "[p]hone calls, text messages, and surveillance evidence showed that [defendant] used his home to receive, weigh, distribute, and cook cocaine"); *United States v. Leggett*, 800 F. App'x 378, 381 (6th Cir. 2020) (noting that "officers found a scale, packaging material, three cell phones, and $700 in cash"). We've also considered the sheer volume of drugs. *United States v. Johnson*, 737 F.3d 444, 446–47 (6th Cir. 2013) (noting that the defendant "stored 1200 pounds of the drug in his home during an eight-month period" and police seized 237 pounds of marijuana, a handgun, $15,000 in cash, a black scale, and three vehicles from the premises).

Given our precedents, we conclude that the district court did not err in applying the enhancement. Consider all the evidence the district court identified that shows that Tripplet used the apartment to operate his drug business. As an initial matter, the police observed four

---

[1]Tripplet does not dispute that he "maintained" the apartment, just the apartment's uses.

controlled buys at the apartment (three in five weeks). That alone is not indicative of a drug house, but it was not the linchpin of the district court's analysis. Substantial quantities of diverse illicit substances suggest a distribution hub, the large amount of cash is potentially indicative of drug sale proceeds, the firearm may serve as protection, and the blenders lined with drug residue could be construed as tools for drug processing prior to sale. The district court also observed that evidence was dispersed throughout the residence, with a "significant portion of the living area devoted to some aspect of drug dealing," drugs "out in the open," not hidden in a closet, and drugs "in the kitchen getting things made up for sale." Sent'g Tr., R. 44, PageID 207. The scale of the drug-related evidence suggests, even alongside non-illicit daily activities, that drug activity was a primary use of the space.

Tripplet's arguments on appeal do not convince us otherwise. *First*, he contends that the district court's decision should be overturned because the apartment primarily served as a family residence, where he lived full-time with his partner and their two young children. But, as we've explained, our precedents do not require that the premises be maintained exclusively for drug distribution or manufacture. The enhancement "requires only that drug activity constitute '*one of the* defendant's primary or principal *purposes*,' not '*the sole* purpose,' for maintaining the premises." *Bell*, 766 F.3d at 638 (citing U.S.S.G. § 2D1.1 cmt. n. 17) (emphasis in original).

*Second*, Tripplet argues that the government's evidence failed to show how long the drugs were present. But it was reasonable for the district court to infer from all the drug-related evidence, including the controlled buys that spanned over a year, that any drug dealing at the premises was not short term or "incidental" to it being Tripplet's residence. Instead, the totality of the evidence supports the inference that Tripplet maintained the apartment for drug trafficking purposes, which justifies applying the enhancement in this case.

**CONCLUSION**

We affirm the district court's sentence.

---

## CONCURRING IN PART AND CONCURRING IN THE JUDGMENT

---

MURPHY, J., concurring in part and concurring in the judgment. The U.S. Sentencing Guidelines increase the potential punishment of a criminal defendant who commits a drug offense "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" U.S.S.G. § 2D1.1(b)(12). I agree with my colleagues that the district court properly invoked this drug-premises enhancement in Condarius Tripplet's case. Yet I part ways with their choice of the standard of review to evaluate the district court's decision.

Our disagreement is narrow. Like my colleagues, I agree that we review purely legal questions (such as a question about the meaning of the phrase "for the purpose of") under a non-deferential de novo standard. *See U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 393 (2018); *United States v. Thomas*, 933 F.3d 605, 608 (2019). And like my colleagues, I agree that we review purely factual questions (such as a question about how often Tripplet sold drugs out of his apartment) under a deferential clear-error standard. *See U.S. Bank*, 583 U.S. at 394; *Thomas*, 933 F.3d at 608. Yet suppose that the parties do not dispute the trial court's findings about the historical facts. And suppose that they do not dispute the appellate court's legal test for deciding what conduct qualifies as the use of a premises "for the purpose of" drug distribution. At that point, all that is left is to apply the undisputed law to the undisputed facts: Do the historical facts rise to the level required to satisfy the legal test? *See U.S. Bank*, 583 U.S. at 394.

Should we review this so-called "mixed question of law and fact" de novo or deferentially? In many recent decisions, the Supreme Court has given a clear answer: It depends. *See Wilkinson v. Garland*, 601 U.S. 209, 221–22, 225 (2024); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020); *Monasky v. Taglieri*, 589 U.S. 68, 83–84 (2020); *U.S. Bank*, 583 U.S. at 395–96. If the mixed question requires courts to "expound on the law" by adopting "auxiliary standards" to guide decisionmaking, an appellate court should review the question de novo. *U.S. Bank*, 583 U.S. at 396. But if the mixed question "immerse[s] courts in case-specific factual

issues," an appellate court should give deference to the district court's answer. *Id.* The Supreme Court has even called for this case-by-case approach in this guidelines context when interpreting a statute that requires circuit courts to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see Buford v. United States*, 532 U.S. 59, 64–66 (2001).

Here, my colleagues do not ask whether the mixed question in this drug-premises context comes with more of a legal than a factual hue. Instead, they conclude that our prior decisions—namely, *United States v. Terry*, 83 F.4th 1039 (6th Cir. 2023), and *United States v. Rich*, 14 F.4th 489 (6th Cir. 2021)—have already held that we should review this mixed question de novo. I respectfully disagree. As I said in a pair of recent opinions, this standard-of-review question remains open in our circuit. *See United States v. Roberson*, 2024 WL 2154285, at *6 (6th Cir. May 14, 2024); *United States v. Heard*, 2024 WL 1049480, at *4 (6th Cir. Mar. 11, 2024).

And neither *Terry* nor *Rich* conflicts with my conclusion. As for *Terry*, it never even used the phrase "mixed question." True, it reasoned that we should engage in "fresh review" when we compare the "accepted facts in the case before us with the facts of" prior cases that have considered this drug-premises enhancement. 83 F.4th at 1041. But I read this sentence as calling for de novo review over whether a district court's finding conflicts with our past precedent. Tripplet does not allege that any such conflict exists in this case. He raises a garden-variety "mixed" question, claiming that the district court's factual findings simply do not meet the required legal test. Confirming this view, *Terry* itself recognized that we have reviewed this traditional "mixed" question deferentially in this context. *See id.* (citing *United States v. Uminn*, 820 F. App'x 353, 356 (6th Cir. 2020)). In *Uminn*, we "accord[ed] due deference to the district court's application of the guidelines to the facts" under the drug-premises enhancement. 820 F. App'x at 356.

As for *Rich*, it had all of one sentence on this topic: "Because our review of this procedural-reasonableness challenge only involves interpreting the Guidelines and applying them to uncontested facts, our review is de novo." 14 F.4th at 495 (citing *United States v. Paauwe*, 968 F.3d 614, 617 (6th Cir. 2020)). But the lone case that *Rich* cited (*Paauwe*) did not even concern the drug-premises enhancement; it concerned an enhancement for sex offenses.

968 F.3d at 615, 617. If *Rich* could be read to hold that we review *all* mixed questions across *all* guidelines de novo, it would conflict with many contrary decisions reviewing these questions deferentially. *See, e.g.*, *United States v. Merritt*, 102 F.4th 375, 381 (6th Cir. 2024); *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019). We have instead taken a "guideline-by-guideline" approach to this standard-of-review question. *Thomas*, 933 F.3d at 609. Besides, the defendant in *Rich* raised a purely legal question that all agree we review de novo: Could a district court use the relevant-conduct guideline to impose the drug-premises enhancement based on a coconspirator's conduct? *See* 14 F.4th at 495. So its stray sentence about the standard of review for mixed questions represents nothing more than nonbinding dicta—which is common for judicial articulations of standards of review. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019); Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1267 (2006).

At the same time, I see no reason to decide this standard-of-review question now. As I have said, I agree that Tripplet's claim fails even under de novo review. So it would necessarily fail under more deferential review. Since my colleagues opt for de novo review, though, I would add that I (like *Uminn*) lean toward reviewing this question deferentially. *See* 820 F. App'x at 356. The Supreme Court has generally recognized that we should review a mixed question deferentially rather than de novo if the correct answer depends on a case-specific "totality-of-the-circumstances" test. *Monasky*, 589 U.S. at 84. Here, the question whether a defendant maintained a premises "for the purpose" of drug distribution will likely depend on all the circumstances of each specific case. U.S.S.G. § 2D1.1(b)(12); *see, e.g.*, *United States v. Johnson*, 737 F.3d 444, 447–48 (6th Cir. 2013). And when "factual nuance may closely guide the legal decision," we tend to give deference to a district court's answer. *Buford*, 532 U.S. at 65.

For these reasons, I concur in part and concur in the judgment.