NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0217n.06

Case No. 24-3360

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Apr 23, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| BRANDON BRYANT | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Brandon Bryant pled guilty to various drug crimes. He now challenges his sentence, claiming that the district court: (1) failed to orally advise him of special conditions placed on his supervised release; (2) improperly considered evidence from his codefendants' trial; and (3) erroneously applied three sentencing enhancements. We reject his arguments and affirm.

## BACKGROUND

Brandon Bryant was a supervisor of a Cleveland drug-trafficking organization that distributed large quantities of fentanyl, cocaine, methamphetamine, and oxycodone. Several members of the organization had ties to a street gang known as the Heartless Felons. The organization's drug-dealing was highly profitable and geographically extensive, with customers travelling long distances for the lower prices Bryant and his codefendants offered. Bryant primarily sold drugs from a house on East 130th Street in East Cleveland, where he installed surveillance cameras and otherwise set up the house for business.

Agents began investigating the operation in March 2021. In addition to Bryant, his sister Branea and her boyfriend Devonn Fair were central participants in the operation. Investigators tapped Bryant's and Fair's cell phones, conducted controlled buys, interviewed witnesses, and located confidential informants. Agents learned that Bryant and Fair were the organizers and primary suppliers of the operation, which was often violent, and that the remaining codefendants redistributed drugs that Bryant and Fair supplied. To illustrate, agents overheard Fair and Bryant discussing organizational strategies such as how to stop another codefendant from speaking with police. They also witnessed Bryant coordinate drug sales through other codefendants.

The government brought charges against 24 people involved in the operation. Bryant pled guilty to 25 counts, including: one count of conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846; sixteen counts of use of a communication facility in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 843(b); and various counts of distribution and possession with intent to distribute drugs including fentanyl, methamphetamine, and cocaine, in violation of 21 U.S.C. § 841(a)(1).

In 2023, after Bryant pled guilty but before he was sentenced, his sister Branea and another codefendant went to trial. At that point, the district court notified Bryant that it might use evidence from that trial in his sentencing hearing.

A year later, the district court sentenced Bryant to 365 months in prison, which was within the advisory sentencing guidelines range calculated by the court. The guidelines calculation included a three-offense-level enhancement for Bryant's leadership role in the conspiracy, a two-offense-level enhancement for possessing a firearm while engaging in a drug crime, and a two-offense-level enhancement for maintaining a drug-related premises. At sentencing, the district court relied on evidence from Bryant's codefendants' trial to support the enhancements.

Bryant's sentence also included a lifetime term of supervised release. His supervised release contained five special conditions that Bryant challenges here: (1) that Bryant receive substance abuse treatment; (2) that Bryant receive mental health evaluation or treatment; (3) that Bryant take all prescribed mental-health medications; (4) that Bryant's home and personal property be subject to search; and (5) that he abstain from any contact with the Heartless Felons gang. Bryant's presentence report (PSR) recommended these special conditions. However, the district court did not mention any of them at sentencing, nor did it orally provide reasons for imposing the conditions.

## ANALYSIS

Bryant now appeals his sentence. He raises procedural challenges to the special conditions of his supervised release and evidentiary challenges to his sentencing enhancements. His arguments fail.

## I. Conditions of Bryant's supervised release

Bryant first argues that the district court erred by failing to advise him orally of special conditions placed on his supervised release. Bryant agrees, as do we, that the plain-error standard applies. *See United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012) (per curiam). His argument fails because even though the district court committed error, Bryant cannot establish any effect on his substantial rights.

Under plain-error review, Bryant must establish: (1) that the district court committed an error; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error affected the fairness, integrity, or public reputation of his judicial proceedings. *Id.* at 1003-04. Bryant has successfully shown the first two elements. Our case law is unambiguous that a

district court judge must orally impose special conditions at sentencing. *See, e.g.*, *United States v. Carpenter*, 702 F.3d 882, 884 (6th Cir. 2012). The district court judge did not do so here.

But Bryant has not shown that the error affected his substantial rights. Sentencing errors impact substantial rights where there is "a reasonable likelihood the errors impacted the sentence." *United States v. Doyle*, 711 F.3d 729, 735 (6th Cir. 2013) (quoting *Inman*, 666 F.3d at 1006)). Thus, the failure to explain a special condition at sentencing does not meet the plain-error standard when the record makes clear why each of the conditions was imposed. *United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015); *see also United States v. Hayden*, 102 F.4th 368, 372 (6th Cir. 2024).

The reasons for each special condition imposed on Bryant are clear from the district court's statements at sentencing, as well as the broader record. For instance, the requirement to participate in substance-abuse treatment makes sense because of Bryant's previous substance-related offenses in prison, RE 1068, Sentencing Hr'g Tr., PageID 10361-62, and Bryant's daily oxycodone use over the span of several years (as detailed in the PSR). The requirement that Bryant participate in mental health screening and take prescribed medications also makes sense. At sentencing, Bryant maintained at length that he had diagnoses for ADHD and PTSD, and the judge considered his mental health in depth. The district court was skeptical about the extent of Bryant's mental health symptoms but reasoned that Bryant's criminal history alone would "certainly [] warrant some future mental health treatment." RE 1068, Sentencing Hr'g Tr., PageID 10357.

The record also supports the remaining conditions. Bryant's lengthy criminal history, detailed in the PSR, justified the search requirement. The district court considered Bryant's ongoing criminal activity, including while incarcerated, and doubted that any sentence would deter Bryant from being a danger to the community. *Id.* at PageID 10362. Finally, Bryant's PSR noted

that he is affiliated with the Heartless Felons gang. At sentencing, the government urged the court to place Bryant as far from northern Ohio as possible to distance him from the gang, which operates primarily in that area. *Id.* at PageID 10350. In response, the court agreed that Bryant needed to be in the "most strident and strict conditions" given his long criminal history and gang affiliation. *Id.* at PageID 10351. The court then agreed that Bryant should be "far removed from this district where he has his roots and alleged[]. . . gang activity." *Id.* at PageID 10363-64.

Although the district court erred by not explicitly stating that it was imposing the special conditions, the reasons are evident from the district court's deliberations and the PSR. In other words, the failure to impose the conditions orally "amount[s] to harmless error, making a remand unnecessary." *Doyle*, 711 F.3d at 734.

Bryant responds that his substantial rights were affected because he had a constitutional right to be present when his sentence was imposed. But Bryant misapprehends the substantial-rights analysis, which requires Bryant to establish that the error impacted the outcome. *See id.* at 735. We do not doubt that the district court clearly erred, and Bryant should have been advised of the special conditions at sentencing. However, these special conditions were not "slipped" into Bryant's sentence, as Bryant argues. CA6 R. 39, Reply Br., at 4. He was advised of these conditions in the PSR, and the judge's sentencing deliberations made clear that they were included in the final sentence for appropriate reasons. Thus, we cannot say that his substantial rights have been affected.

## II.     Sentencing enhancements

Bryant next challenges three sentencing enhancements he received for: (1) having a management role in the organization; (2) carrying a firearm while engaging in drug sales; and (3) maintaining a drug premises. Bryant primarily argues that the district court erred by relying

on his memory of evidence presented at the codefendants' trial. In doing so, Bryant also challenges the evidence underlying each enhancement. Both arguments are unavailing.

### A. The district court's reliance on evidence from the codefendants' trial

Bryant argues that the district court should not have imposed sentencing enhancements based on evidence from his codefendants' trial. He maintains that this evidence is unreliable, and he did not have the ability to confront the witnesses who testified.

However, our precedent allowed the district court to consider his codefendants' trial. The district court retains "wide discretion" in the kind of evidence it may consider at sentencing. *United States v. Silverman*, 976 F.2d 1502, 1508 (6th Cir. 1992) (en banc) (quoting *Williams v. New York*, 337 U.S. 241, 246 (1949)). That discretion extends to testimony from related proceedings, when there is "sufficient indicia of reliability." *Logan v. United States*, 208 F.3d 541, 544 (6th Cir. 2000).

Bryant's argument also fails because "neither the rules of evidence nor the right to confront witnesses applies at sentencing." *United States v. Bey*, 384 F. App'x 486, 490 (6th Cir. 2010) (quoting *United States v. Christman*, 509 F.3d 299, 304 (6th Cir. 2007)); *see also* U.S.S.G. §6A1.3(a). For example, the district court may "consider hearsay evidence" as long as it has "some minimal indicia of reliability in respect of defendant's right to due process." *Bey*, 384 F. App'x at 490 (quoting *Silverman*, 976 F.2d at 1512). The types of evidentiary protections that Bryant seeks are simply unavailable to defendants at sentencing, a fact even Bryant acknowledges.

This broad evidentiary discretion for the district court at sentencing does not leave the defendant unprotected. Defendants must be given a "meaningful opportunity to respond" to evidence relied upon by the sentencing court. *United States v. Coppenger*, 775 F.3d 799, 806 (6th Cir. 2015). The emphasis, then, is on giving the defendant notice that outside evidence will be

considered at sentencing, such that he may object to its accuracy. Here, Bryant received notice more than a year in advance that evidence from his codefendants' trial would be considered. That notice afforded him the protection of the adversarial process, which is all that was required.

Bryant additionally contends that the district court judge should have relied on the written trial transcript, rather than his own memory, when determining his sentence. To be sure, trial transcripts are typically more reliable than a judge's memory. However, the district court judge's memory of a trial can be reliable enough to meet the threshold for consideration at sentencing. *See* U.S.S.G. §6A1.3(a).

Furthermore, Bryant has not pointed to any evidence that the district court judge misremembered anything. For example, he argues that, when applying the leadership enhancement, the district court judge only cursorily referred to "the evidence" before moving on. This argument takes issue with the judge's lack of explanation, but not the factual source for the judge's rulings.

**B.    Analysis**

The district court also properly applied each sentencing enhancement based on the evidence available.

**1.    Leadership enhancement**

The district court imposed a three-level enhancement under U.S.S.G. §3B1.1(b) for being a "manager or supervisor" in criminal activity involving five or more participants. This enhancement is not the highest available but is one level below being an "organizer" or "leader." We review a sentencing enhancement under §3B1.1 under a deferential standard of review, given the fact-intensive nature of the inquiry. *United States v. Minter*, 80 F.4th 753, 758 (6th Cir. 2023); *United States v. Johnson*, 79 F.4th 684, 710 (6th Cir. 2023).

There was ample evidence, both from Bryant's PSR and his codefendants' trial, to support the enhancement. Our case law identifies various factors that are relevant to the leadership enhancement determination, including the exercise of decisionmaking authority, recruitment of accomplices, receipt of a larger share of profits, participation in planning operations, or the exercise of control over an accomplice. *Minter*, 80 F.4th at 758 (quoting *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009)).

Many of these factors were present here. Bryant engaged in strategic discussions with other leadership members of the organization. For example, he discussed with Devonn Fair strategies for keeping a codefendant from speaking to the police. *See* RE 988 PSR, PageID 9575. He also directed other codefendants, like Jamyra Craig, to sell drugs on his behalf. *See id.* at PageID 9576. The trial transcripts confirmed and elaborated upon these relationships. *See, e.g.*, RE 679, Trial Tr., PageID 5670-71.

Bryant contends that his sister, Branea Bryant, was above him in the organization. However, even if his sister held authority over Bryant, the enhancement was based on his role in strategic planning and direction of other accomplices. *See Minter*, 80 F.4th at 758. The same is true of the government's concession that Bryant was "one rung" below Devonn Fair. In other words, the enhancement could still apply even if others outranked Bryant. Under the deferential standard of review, we find that adequate evidence supported the leadership enhancement. The district court did not err in applying it.

### 2. Firearm possession

The district court also applied a two-level enhancement for possession of a firearm. *See* U.S.S.G. §2D1.1(b)(1). We review for clear error the finding that a defendant in a drug case was in possession of a firearm. *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019) (quoting

*United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002). Bryant contends that the firearm enhancement was applied solely based on evidence presented at his codefendant's trial.

As discussed, though, the district court could rely on this evidence. In addition, Bryant's PSR detailed testimony from his customers that he brought a gun to drug transactions, phone calls in which Bryant discussed his gun, the discovery of ammunition in his apartment, and a standoff with police during which one of Bryant's accomplices brandished a firearm. On this record, the district court did not clearly err in applying the firearm enhancement.

### 3. Maintaining a drug-related premises

Finally, the district court applied a two-level enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. §2D1.1(b)(12). There is some disagreement in our case law as to what standard of review to apply here. *See United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014) (collecting cases). *Compare United States v. Tripplet*, 112 F.4th 428, 432 (6th Cir. 2024) (applying de novo review), *with id.* at 434-35 (Murphy, J., concurring) (arguing for "deferential" review). We need not decide whether clear error or de novo review applies because, under either standard, the district court correctly applied this enhancement.

An enhancement for maintaining a drug-related premises may be applied when one "(1) knowingly (2) open[s] or maintain[s] any place (3) for the purpose of distributing a controlled substance." *United States v. Hernandez,* 721 F. App'x 479, 484 (6th Cir. 2018) (quoting *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013)). Drug storage and transactions on a property suffice. *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (quoting *Bell*, 766 F.3d at 638). Furthermore, a court can consider the conduct of a coconspirator. *Id.* at 1045.

Bryant does not dispute that he engaged in drug transactions at several of the relevant premises. Rather, he maintains that his sister owned the property at East 130th Street where he primarily conducted drug transactions. However, there is no requirement that the defendant hold title to a premises. *See United States v. Taylor*, 85 F.4th 386, 389-90 (6th Cir. 2023). To maintain a premises, the defendant need only show "de facto" control over the activities there, which need not be exclusive or continuous. *Id.* (quoting *Hernandez*, 721 F. App'x at 484). Bryant's PSR based the enhancement on "numerous" drug transactions at East 130th Street, which he does not dispute. RE 988, PSR, at PageID 9589. Bryant installed security cameras at the house, and otherwise exhibited "de facto" control over activities at the house. *See, e.g.*, RE 687, Trial Tr., at PageID 6344-46. Moreover, the enhancement may be applied if his sister, as a coconspirator, maintained the premises. *Terry*, 83 F.4th at 1045. On these facts, the district court appropriately applied this enhancement.

## CONCLUSION

For these reasons, we affirm Bryant's sentence.