NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0461n.06

No. 24-1989

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 10, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| GEORGE WILLIAM HENRY, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and WHITE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** George William Henry pleaded guilty to two firearms offenses. He challenges the procedural reasonableness of his sentence, arguing that the district court mistakenly determined that an incident nine months after his offense of conviction was relevant conduct under the Guidelines. Finding no error, we **AFFIRM** the sentence imposed by the district court.

## I. BACKGROUND

On January 25, 2023, officers executed a state search warrant on George William Henry's Kalamazoo residence after documenting several controlled cocaine buys from him there. R. 41 (PSR ¶¶ 16–18) (Page ID #169). On the main floor of Henry's home, they found about 30 grams of cocaine base along with drug trafficking paraphernalia including gloves, a digital scale, sandwich bags, baking soda, and inositol powder. *Id.* ¶ 18 (Page ID #170). They also discovered two loaded firearms: an AR-15-style rifle equipped with a bump stock and drum magazine, and a

9mm handgun. *Id.* In the basement, officers located more drug paraphernalia, ammunition, and another firearm, this one a Winchester Model 94-32 rifle. *Id.* After waiving his *Miranda* rights, Henry told the investigating officers that he kept the firearms for protection because his house had recently been shot at. *Id.* ¶ 19 (Page ID #170).

The second incident occurred on August 9, 2023, a little over six months later. Police officers approached a vehicle that was parked in violation of a local ordinance. R. 41 (PSR ¶ 21) (Page ID #170). Inside were Henry and a female companion. *Id.* The officers discovered that Henry had several outstanding warrants and arrested him, and, after seeing drug paraphernalia in the car, they conducted a vehicle search. *Id.* Next to Henry's seat, they discovered a sandwich bag with thirty-four individual paper folds, which together contained 16.84 grams of cocaine base. *Id.* ¶ 21 (Page ID #170–71). Behind Henry's seat, they found another bag containing 24.92 grams of cocaine base divided among fifty-eight individual bag corners. *Id.* ¶ 22 (Page ID #171). There were two firearms in the car: one in the glovebox that they determined belonged to Henry's companion, and a loaded stolen 9mm handgun behind Henry's seat. *Id.* ¶¶ 21–22 (Page ID #171). Henry told the officers that he had no knowledge of the cocaine base or the handgun. *Id.* ¶ 23 (Page ID #171).

The third incident took place on November 4, 2023, when police pulled Henry over for driving with a defective headlight. R. 41 (PSR ¶ 25) (Page ID #171). There were again outstanding warrants for Henry's arrest, and officers discovered 2.71 grams of cocaine in six individual bindles on Henry's person, as well as a loaded 9mm handgun in the vehicle, which had no other occupants. *Id.* ¶¶ 25–26 (Page ID #171). Information from the National Integrated

Ballistic Information Network linked the handgun to a homicide and an attempted homicide, both of which occurred in October 2023. *Id.* ¶ 28 (Page ID #172).

On November 14, 2023, a federal grand jury in the Western District of Michigan returned a six-count indictment against Henry. R. 1 (Indictment) (Page ID #1). The indictment involved the January and August incidents. For each incident, Henry was charged with violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), 21 U.S.C. § 841 (possession of cocaine and cocaine base with the intent to distribute), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime). *Id.* at 1–6 (Page ID #1–6).

Henry agreed to plead guilty to two counts—under Section 922(g) and Section 924(c)— relating to the January 25, 2023 search, and the Government, in return, agreed to dismiss the remaining counts. R. 30 (Plea Agreement ¶¶ 1, 8) (Page ID #91, 94). Specifically, Henry admitted to possessing the AR-15-style rifle and 9mm handgun recovered from the main floor of his residence. *Id.* ¶ 8 (Page ID #94). Henry pleaded guilty to the two counts on May 28, 2024. R. 54 (Plea Hr'g Tr.) (Page ID #292).

The United States Probation Office prepared an initial presentence investigation report. R. 39 (Initial PSR) (Page ID #112). The report outlined the three above-described incidents as part of the offense conduct. *See id.* ¶¶ 14–29 (Page ID #115–19). The initial PSR calculated a base offense level of twenty and, as relevant here, recommended a two-level enhancement under USSG § 2K2.1(b)(1)(A) on the basis that Henry's offense conduct involved at least three firearms, among other adjustments. *Id.* ¶ 35 (Page ID #121). The recommended total offense level was twenty-one. *Id.* ¶ 45 (Page ID #122).

Henry objected to report's inclusion of the August and November incidents as part of his offense conduct. R. 40 (Def.'s Obj. at 2) (Page ID #152). In his sentencing memorandum, he argued that August and November incidents were not relevant conduct under USSG § 1B1.3 because of "differences in times, locations, and circumstances." R. 43 (Def.'s Sent'g Mem. at 2–4) (Page ID #218–20). The Government responded that because in each instance, "Henry had [a] gun while in possession of drugs ready to sell," the August and November incidents were relevant. R. 45 (Gov't Sent'g Mem. at 2–3) (Page ID #263–64).

The district court sentenced Henry on November 1, 2024. R. 55 (Sent'g Hr'g Tr.) (Page ID #314). The government conceded that the Winchester rifle in Henry's basement in the January incident was unrelated to his drug-distribution conduct, and thus did not count towards the three-firearms enhancement. *Id.* at 6–7 (Page ID #319–20). In addition, the district court did not find that Henry possessed the handgun found behind his car seat in the August incident, noting "conflicting evidence as to whether [he] had a connection to that weapon." *Id.* at 11 (Page ID #324). This left only the 9mm handgun found in Henry's car in November as a potential third firearm. The district court found that the November incident was relevant, noting an "ongoing course of conduct by this defendant during the calendar year 2023 in which there's a linkage between distributor quantities of drugs packaged in ways obviously intended for distribution and the defendant's possession of firearms." *Id.* at 11–12 (Page ID #324–25). The court accordingly overruled Henry's objection and applied the two-level enhancement.

The enhancement resulted in an offense level of twenty-one and a Guidelines range of forty-six to fifty-seven months on Count 1, Henry's felon-in-possession conviction. *Id.* at 12 (Page ID #325). After considering the factors in 18 U.S.C. § 3553(a), the district court imposed a

4

sentence at the bottom end of the Guidelines range: 46 months on Count 1 and the mandatory 60 months on Count 3, to be served consecutively. *Id.* at 24 (Page ID #337); *see also* R. 50 (Judgment at 2) (Page ID #278). The district court entered judgment on November 4, 2024, and Henry noticed an appeal four days later. *Id.*; R. 52 (Notice of Appeal) (Page ID #288).

## II. ANALYSIS

### A. Standard of Review

We construe a defendant's challenge to the application of a Guidelines enhancement as a challenge to the procedural reasonableness of his sentence. *United States v. Tripplet*, 112 F.4th 428, 431 (6th Cir. 2024). While "[t]here are inconsistent opinions in this circuit regarding the proper standard of review in cases where a district court has determined that certain activity qualifies as 'relevant conduct,'" we review de novo a district court's relevant conduct determination where, as here, it "involves the application of law to fact." *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999) (quoting USSG § 1B1.3(a)(2)); *see also United States v. West*, 962 F.3d 183, 187–88 (6th Cir. 2020); *United States v. Benton*, 957 F.3d 696, 700-01 (6th Cir. 2020); *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018); *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008). We review "the underlying factual findings . . . for clear error." *Donadeo*, 910 F.3d at 893.

### B. Relevant Conduct

Henry's argument on appeal is simple: the November conduct was not relevant, and he therefore possessed just two firearms in relation to his offense conduct. *See* USSG § 2K2.1(b)(1)(A) (providing for a two-level increase in the offense level "[i]f the offense involved three or more firearms"). To determine whether conduct is relevant in the sentencing context, we

follow the Guidelines and ask whether it comprised "part of the same course of conduct" as a defendant's offense of conviction, or whether the conduct and the offense of conviction were part of a "common scheme or plan." *Phillips*, 516 F.3d at 483 (quoting USSG § 1B1.3(a)(2)). Conduct is relevant when the answer to either question is yes. The parties here invoke only the "same course of conduct prong," which is governed by a three-factor test. We consider, in turn, "the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses." *Id.* (citing USSG § 1B1.3(a)(2) cmt. 9(B)). The Guidelines provide no "bright-line rule," but instead counsel "a sliding scale approach, i.e., where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor." *United States v. Hill*, 79 F.3d 1477, 1484 (6th Cir. 1996).

Here, the factors support a finding that the November incident was part of the same course of conduct as Henry's January offense. We begin with similarity. The two incidents bear indicia of "similarity beyond the act of unlawfully possessing a gun." *United States v. Amerson*, 886 F.3d 568, 578 (6th Cir. 2018). In both January and November, Henry was found in possession of distribution quantities of drugs—cocaine base and cocaine, respectively—packaged for individual sale and use, supporting the district court's conclusion that the drugs were "obviously intended for distribution." *See* R. 55 (Sent'g Hr'g Tr. at 11) (Page ID #324). Each event also involved possession of a loaded 9mm handgun. R. 41 (PSR ¶¶ 18, 25) (Page ID #170–71).

Regularity is also present, but to a lesser extent. Although the district court ultimately considered only the January and November events as relevant conduct, it relied on all three episodes in the record in finding an "ongoing course of conduct . . . during calendar year 2023." R. 55 (Sent'g Hr'g Tr. at 11) (Page ID #324). In general, this court has held that "[t]here is no

regularity [where] there are only two instances of unlawful gun possession." *United States v. Bowens*, 938 F.3d 790, 799 (6th Cir. 2019). But here, the two similar incidents involving both firearm-possession and drug distribution were punctuated by a third in which Henry was also found in possession of distribution quantities of cocaine base alongside (though not definitively possessing) a 9mm handgun. *See* R. 41 (PSR ¶¶ 14–29) (Page ID #168–72). It is also significant that the November incident took place after Henry's arrest and indictment for the January incident. We have held that the post-indictment possession of firearms strengthens the case for regularity because it "suggests that [the defendant's] arrest . . . did not deter him from possessing firearms and that he may have carried firearms regularly." *Phillips*, 516 F.3d at 484–85.

There is also sufficient temporal proximity. The January and November incidents were nine months and ten days apart, just a hair outside the "nine-month period that we have identified as sufficient for upholding a course-of-conduct determination involving several illegal firearm possessions." *Amerson*, 886 F.3d at 574; *see also Phillips*, 516 F.3d at 483. Where we have found a complete absence of temporal proximity, by contrast, the gap between events is much longer. *See Hill*, 79 F.3d at 1484 (nineteen months between incidents).[1] In sum, all three of the "course of conduct" factors are present in sufficient degree to affirm the district court's relevant conduct determination and the attribution of a third firearm to Henry under Section 2K2.1(b).

---

[1]Henry would have us look to out-of-circuit cases where courts have held that events five or six months apart are remote. D. 14 (Appellant's Br. at 5) (citing *United States v. Hahn*, 960 F.2d 903, 910–11 (9th Cir. 1992); *United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir. 1992)). Even, if we allowed these non-binding cases to guide our analysis, each also noted that substantial similarity between the events would be sufficient to overcome the weak temporal proximity. *Hahn*, 960 F.2d at 910–11 (finding no evidence of "specific similarities"); *Mullins*, 971 F.2d at 1144–45 (finding that additional offense involved an entirely distinct criminal scheme). Because the incidents at issue here are meaningfully similar, neither *Hahn* nor *Mullins* persuades us.

Henry argues that our caselaw compels us to hold otherwise, but he relies on cases in which one or more of the three factors were completely absent. He first directs us to *Amerson*, a case involving two instances of firearm possession in which the government showed only temporal proximity, failing to demonstrate any meaningful degree of regularity or similarity between the two offenses beyond the tautology that both involved illegal possession of firearms. D. 14 (Appellant's Br. at 6) (citing *Amerson*, 886 F.3d at 575–78). This case is different, however, and far more closely resembles *Phillips*, where the evidence showed a "common purpose" that tied together the separate instances of firearm possession. 516 F.3d at 485. Indeed, the similarities here run deeper than in *Phillips*, as the district court determined that Henry possessed the firearms in the course of a pattern of illegal drug distribution. *Compare* 516 F.3d at 484–85, *with* R. 55 (Sent'g Hr'g Tr. at 11–12) (Page ID #324–25).

Henry next looks to *United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019), and *Hill*. *Bowens*, like this case, involved two instances of firearm possession and the application of § 2K2.1(b)'s enhancement for possession of three or more firearms. The conviction in that case arose from the discovery of two firearms in the defendant's vehicle alongside marijuana. 938 F.3d at 792. Months earlier, in an uncharged incident, a firearm was found under a pillow in Bowens's bedroom at his mother's house. *Id.* at 798. The court's finding of non-relevance there turned on the fact that "[t]here was nothing similar about Bowens' separate acts of possession *other* than the general nature of the offense." *Id.* at 800. Similarly, in *Hill* there were few relevant similarities between two cocaine sales nineteen months apart other than "that both transactions involved the same type of drug." 79 F.3d at 1484. As described above, Henry's offenses have more in common than just the possession of firearms, so neither *Bowens* nor *Hill* requires reversal.

8

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.