RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

FRED D. GOLSON, JR.,

        *Defendant-Appellant.*

No. 23-3078

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cr-00663-1—James S. Gwin, District Judge.

Decided and Filed:  March 11, 2024

Before:  BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  K.L. Penix, ALDERMAN LAW FIRM, Fort Collins, Colorado, for Appellant. Matthew W. Shepherd, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────

## OPINION

─────────────

DAVIS, Circuit Judge.  Fred Golson, Jr., pleaded guilty to two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Based on an offense level of 17 and a criminal history category of VI, Golson's Sentencing Guidelines range was 51 to 63 months' imprisonment.  In calculating Golson's Guidelines range, the district court added a two-level enhancement because it found that Golson's flight from law enforcement during one of the underlying incidents amounted to reckless endangerment pursuant

to U.S.S.G. § 3C1.2.  The court ultimately sentenced Golson to 56 months' imprisonment, three years of supervised release, and a $200 special assessment.  Golson challenges the imposition of his sentence on procedural reasonableness grounds.  Specifically, he maintains that the district court erred in applying the two-level enhancement because he was not the driver of the vehicle at the time of the incident.  Because the undisputed facts of the case create a reasonable inference that Golson was an active participant in the reckless flight from police, we AFFIRM.

**I.**

Golson's offenses of conviction stem from two separate incidents.  The first incident occurred in April 2021 when law enforcement responded to a shooting outside of a local business in Elyria, Ohio.  Golson and three other individuals arrived in a blue Ford Focus, exited the vehicle, and opened fire at several individuals.  After the shooting, the vehicle fled the scene.  Officers from a neighboring department tried to stop the car about 2.5 miles away from the scene of the shooting.  During its getaway, the vehicle traveled approximately 55 miles per hour in a residential area, drove off the road and into the grass to avoid "stop sticks" placed on the road by law enforcement, and crashed.  Three of the occupants remained in the vehicle and were immediately detained, but Golson jumped out of the car and fled on foot.  The officers searched the vehicle and recovered four firearms, one of which was later tested and contained Golson's DNA.  Officers located and arrested Golson three hours after the crash.

The second incident occurred in June 2021 when officers responded to reports of shots being fired between two vehicles and several individuals on Abbe Road North in Elyria.  When officers first arrived, they could not find the individuals, but officers viewed security camera footage and observed Golson flee the vehicle and hide a firearm behind a local bar.  Officers retrieved the firearm, which contained Golson's DNA.  Golson was indicted in the United States District Court for the Northen District of Ohio for being a felon in possession of a firearm in relation to the April 2021 incident.  Over a week later, the grand jury returned a superseding indictment, which added a second felon-in-possession charge for the June 2021 incident.

Golson pleaded guilty to both counts pursuant to a Rule 11 plea agreement.  The parties stipulated to a base offense level of 14, plus a four-level increase because the firearm was used in

connection with another felony offense. The probation department prepared a Presentence Report ("PSR"), which recommended the same base offense level and four-level enhancement as the plea agreement. But the PSR also recommended an additional two-level increase pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight based on Golson's flight from law enforcement in April 2021. This adjustment led to an adjusted offense level of 20. Golson received a three-level reduction for his acceptance of responsibility, leaving a total offense level of 17. With an offense level of 17 and a criminal history category of VI, Golson's advisory Guidelines range was 51 to 63 months' imprisonment.

Golson made several objections to the PSR, including one challenging the two-level enhancement under § 3C1.2. Concerning the applicability of § 3C1.2, the PSR stated:

> [T]he defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer; therefore, two levels are added. The defendant fled from officers by driving in excess of 55 miles per hour through residential areas, driving off of the road, and committing several traffic violations. Additionally, the defendant abandoned his vehicle with a firearm inside of it and left a second gun unsecured behind a bar.

(R. 37, Page ID 159, ¶ 21). Golson took issue with this assessment, objecting that he was "running on foot from law enforcement, and at no time did he discharge a firearm." (*Id.* at 176). The probation department declined to alter its recommendation and instead responded with a more fulsome explanation of why the enhancement applied. Relevant here, the probation officer reviewed the Guidelines' description of what constitutes "reckless" conduct[1] and explained that "the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2, cmt n.5. As to Golson's part in the flight, the probation officer noted that Golson (1) "was the only person in the vehicle to flee from officers on foot" after the crash; (2) "was an active member in the flight from law enforcement"; and (3) "was involved in a shooting [that]

---

[1]The Sentencing Guidelines define "reckless" as situations in which "the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt n.1.

caused the driver of the vehicle, who was involved in the same shooting, to begin to flee from law enforcement." (R. 37, PageID 176–77).

In his sentencing memorandum, Golson requested that the district court apply the offense level to which the parties had stipulated in the plea agreement instead of the probation department's recommended two-level § 3C1.2 enhancement because it was not contemplated in the plea agreement. At sentencing, the district court specifically considered, among other objections, Golson's objection to the two-level increase. Making no mention of Golson's status as a passenger as a reason for the objection, defense counsel argued that Golson did not qualify for the enhancement because there was no "potential risk of serious bodily harm." (R.56, PageID 237–38). The district court first confirmed with the probation officer that the enhancement applied based on the vehicle's flight and not on Golson's "fleeing after the vehicle came to a stop." (*Id.* at 238). Focusing, then, on whether the situation created a potential risk of serious bodily harm, the court inquired about the road conditions on the day of the chase, including the busyness of the road, the "nature" of the street, the speed limit, and the time of day. (*Id.* at 239). For its part, the defense contended that the vehicle's purported 55 mph rate of speed, where the speed limit was 35 mph, "might not be an excessive speed for the area." (*Id.*). Satisfying itself that a substantial risk of harm existed, the court overruled the objection and accepted the PSR's recommendation to apply the increase. The court sentenced Golson to 56 months' imprisonment, three years of supervised release, and a $200 special assessment. Golson timely appealed.

**II.**

*Issue Preservation*. Before addressing the applicable standard of review, we must first ascertain whether Golson preserved his argument for appellate review. *See United States v. Thomas-Mathews*, 81 F.4th 530, 538 (6th Cir. 2023). "A 'defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing.'" *Id.* (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009)) (cleaned up). In determining whether a forfeiture based on a defendant's failure to object has occurred, we look to whether the challenging party provided a "'clear articulation of any objection and the grounds therefor,' to 'aid the district court in correcting any error, tell the

appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply the proper standard of review to those preserved.'" *Id.* (alteration in original) (quoting *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004)).

Golson insists that he did raise the objection that § 3C1.2 does not apply based on his status as a passenger during the vehicle's flight. Yet, this argument is largely unsupported by the record. In his objections to the PSR, as it pertains to the purported misapplication of § 3C1.2, Golson merely "argued that he was running on foot from law enforcement, and at no time did he discharge a firearm." (R. 37, PageID 176). Golson's objection described such activity as "benign," contending further that recklessness requires a "higher degree of culpability." (*Id.*) His sentencing memorandum expounded no further as to why the reckless endangerment enhancement should not apply. Then, during the court's review of his § 3C1.2 objection at the sentencing hearing, Golson focused exclusively on the fact that the speed of the vehicle was not so excessive as to cause reckless endangerment. While Golson himself questioned his culpability as a non-driver during his allocution,[2] his argument was never adopted or presented by counsel. And we know that Golson had the opportunity to discuss sentencing issues with his attorney ahead of sentencing, for the court confirmed with Golson at the beginning of the sentencing hearing that he had reviewed the PSR with counsel prior to the hearing, and his counsel confirmed that Golson continued to object to the application of § 3C1.2—as "included in [his] sentencing memorandum and the supplement." (R. 56, PageID 232–33).

Because Golson was represented by counsel before the district court, his legal arguments were required to be presented by his counsel. Allowing Golson to represent himself would have amounted to "hybrid representation," which is not permitted without leave of the court. *See United States v. Miller*, 561 F. App'x 485, 488 (6th Cir. 2014) (quoting *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir.1987)) (noting that a defendant "'has a constitutional right to be represented by counsel *or* to represent himself during his criminal proceedings, but not both'")

---

[2]Golson broached the issue during his allocution, stating: "And on April 29th I was not the driver of that car, so how could I make that man go on a high-speed chase? How could you all give me extra points for that and not -- and I wasn't even a driver? So it's—I was going 50—it clearly said I was a passenger, that front seat passenger." (R. 56, PageID 252). In response, the court addressed Golson and concluded: "nonetheless—I'm in a position where I've set the offense level." (*Id.* at 253).

(emphasis in original). Notably, no such request was made below. Moreover, the allocution statements occurred after the district court had made its findings as to all objections to the enhancement and were not revisited by Golson's counsel[3] when the court queried the parties about continued concerns or objections as required under *Bostic*, 371 F.3d at 872–73.

In further support of his argument that the objection was preserved for appellate review, Golson directs us to a statement from the PSR where the probation officer described Golson's objection: "The defendant cited unspecified case law and Due Process of Law, which forbids the 'stretching' of this section to include benign activity such as running away or fleeing in a vehicle." (R. 37, Page ID 176). But this opaque reference does little to establish that Golson's challenge was based on his status as a passenger. Such a concealed mention of an objection cannot rise to the level of a "specific objection" for purposes of issue preservation because it failed to "provide[] the district court with an opportunity to address the error in the first instance and [does not] allow[] this court to engage in more meaningful review." *Bostic*, 371 F.3d at 871.

Golson had multiple opportunities after the filing of the PSR to clarify his position and to specifically object to the enhancement based on the premise that he was not the driver of the vehicle; Golson failed to do so. As such, this argument was not properly preserved for appeal. Golson's failure to preserve the issue is not fatal to his claim, however. As explained below, we review for plain error.

**A.**

*Standard of Review.* "On appeal, district court sentencing determinations are reviewed for reasonableness." *United States v. Gates*, 48 F.4th 463, 468 (6th Cir. 2022).

---

[3]Notably, FED. R. CRIM. P. 32(i)(1)(D) permits a party "for good cause" to raise a new objection before the sentence is imposed. Yet, no such request, let alone argument for cause, was made here. In finding as we have, we do not close the door on a defendant's ability to preserve a previously-unraised issue during allocution and have no occasion to quibble with prior non-binding rulings finding or suggesting preservation through allocution. *See, e.g.*, *United States v. Boese*, 187 F.3d 638 (6th Cir. 1999) (unpublished table decision) (finding defendant's objection to application of the Armed Career Criminal Act during allocution preserved issue for appeal, without further discussion of circumstances resulting in defendant's, rather than counsel's, raising the issue); *United States v. Flowers*, 428 F. App'x 526, 529 (6th Cir. 2011) (upholding district court's striking of defendant's pro se letter of allocution raising new objection(s) as violative of the rule against hybrid representation, but noting in dicta the defendant's failure to mention the objection in his allocution—as well as counsel's failure to raise it at sentencing—was grounds to find the issue not preserved).

"The reasonableness inquiry has two components: procedural and substantive." *Id.* at 468–69 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Procedural error occurs when the district court "fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *Id.* at 469 (quoting *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016)) (cleaned up). The district court's application of the § 3C1.2 enhancement—Golson's sole challenge on appeal—is a matter of procedural reasonableness.

Although courts generally review whether a sentence is reasonable under abuse of discretion, *see United States v. Pennington*, 78 F.4th 955, 962 (6th Cir. 2023), "[w]here a defendant fails to properly preserve an issue for appeal, that claim is subject to review for plain error only." *Thomas-Mathews*, 81 F.4th at 541 (quoting *Herrera-Zuniga*, 571 F.3d at 580); *see also United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021) ("Where a defendant fails to preserve a procedural reasonableness argument, the plain error standard further constrains our review."). To establish the requirements for plain error relief, Golson "must show the district court committed (1) an error that was (2) plain and (3) affected his 'substantial rights.' If he can satisfy those three 'threshold requirements,' then we have discretion to grant relief only if (4) we conclude 'that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Simmonds*, 62 F.4th 961, 964 (6th Cir. 2023) (internal citations omitted) (quoting *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021)). "Satisfying all four prongs of the plain-error test is difficult**.**" *Greer*, 141 S. Ct. at 2097 (internal quotations omitted). And because the plain-error standard is "extremely deferential," we "will reverse only in exceptional circumstances to correct obvious errors that would result in a miscarriage of justice." *Hymes*, 19 F.4th at 933; *see also United States v. Murphy*, 241 F.3d 447, 451 (6th Cir. 2001) ("Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial.") (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)). Notably here, whether we review for plain error or abuse of discretion—in which case we weigh whether we are "left with a definite and firm conviction that the district court committed a clear error of judgment," *United States v. Periz-Rodriguez*, 960 F.3d 748, 753 (6th

Cir. 2020) (citation omitted)—the undisputed facts in the PSR support the district court's finding that the § 3C1.2 enhancement is applicable to Golson.

**B.**

When reviewing the first prong of the plain-error standard, we look for "forfeited-but-reversable error." *Simmonds*, 62 F.4th at 964 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). To satisfy this prong, Golson must show that the district court incorrectly applied the two-level enhancement based on the record. *See id.*; *see also* FED. R. CRIM. P. 52(b). Because the record supports an inference that Golson participated in the flight from law enforcement, Golson cannot demonstrate error.

*Sentence Enhancement Pursuant to U.S.S.G. § 3C1.2.*[4] Golson maintains that the district court erroneously applied the two-level enhancement for reckless endangerment during flight from law enforcement because he was not the driver of the vehicle and did not facilitate the chase. As a result, Golson argues that his sentence is procedurally unreasonable.

"We review a district court's 'legal interpretation of the Guidelines de novo and its factual findings' for clear error." *United States v. Jones*, 81 F.4th 591, 597 (6th Cir. 2023) (quoting *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012)). The burden of proof lies with the government to show, by a preponderance of the evidence, that a sentencing enhancement applies. *United States v. Bourquin*, 966 F.3d 428, 433 (6th Cir. 2020). Under U.S.S.G. § 3C1.2, a defendant will receive a two-level sentencing enhancement "if [he or she] recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." "Reckless" in this context means that the "conduct was at least reckless [as defined in U.S.S.G. § 2A1.4 cmt. n.1] and includes any higher level of culpability." U.S.S.G. § 3C1.2 cmt. n.2. And as noted above, a defendant subject to this section "is

---

[4]To the extent that Golson argues that the district court erred in applying a different base offense level from the one provided in the plea agreement, this argument has no merit because courts are permitted to do so in Rule 11(c)(1)(B) plea agreements, which is the nature of the agreement before this court. *See United States v. Vinson*, No. 22-3028, 2023 WL 2624173, at *4 (6th Cir. Mar. 24, 2023) ("[U]nder Federal Rule [of Criminal Procedure] 11(c)(1)(B)[,] the court is not required to follow the base offense level stipulated in the plea agreement.").

accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." *Id.* at cmt. n.5.

To apply the § 3C1.2 enhancement to a passenger in a vehicle evading law enforcement, "the district court must specifically find that the passenger was responsible for or brought about the driver's conduct in some way, and it must explain why." *Byrd*, 689 F.3d at 640 (internal quotation marks omitted). This is because holding a passenger liable for a driver's reckless conduct requires that there be "'some form of direct or active participation' in the reckless driving by the passenger." *Id*. (quoting *United States v. Chong*, 285 F.3d 343, 346 (4th Cir. 2002)). In the absence of direct evidence, courts may "infer that the passenger caused or encouraged the reckless driving based on conduct occurring before, during, or after a high-speed chase." *Id.* (internal quotation marks omitted). But there are limits to making such an inference. The mere fact that a defendant is a passenger in a vehicle where a co-defendant is driving recklessly is not enough to apply § 3C1.2. *See United States v. Cespedes*, 663 F.3d 685, 690 (3d Cir. 2011). Nor is the idea that "a reckless getaway is a reasonably foreseeable outcome of the underlying crime" sufficient by itself to apply the enhancement. *Byrd*, 689 F.3d at 640. Rather, the government must proffer evidence to show the direct or active involvement of the passenger, and if the argument is appropriately raised before the district court for review, the court must articulate its justification for imposing the enhancement.

Here, we have found that Golson did not appropriately raise the issue before the district court. As a result, there was no targeted discussion about Golson's status as a passenger in assessing the applicability of the enhancement at sentencing. Nevertheless, the stipulated facts in the PSR provide an adequate record to support an inference of Golson's culpability in the reckless flight from law enforcement. *See United States v. Armes*, 953 F.3d 875, 880 (6th Cir. 2020) (explaining that it is well-established that courts "may accept *any* undisputed portion of the presentence report as a finding of fact") (emphasis in original) (quoting FED. R. CRIM. P. 32(i)(3)(A)). First, Golson was an active participant in a crime (a shooting in broad daylight), with multiple witnesses who had the means—in this case telephones—to promptly report the incident to authorities. Like in *Byrd*, it is reasonable to infer that flight would be necessary after such a public display. *See Byrd*, 689 F.3d at 641 (noting that "Byrd . . . participated in a robbery

that would entail employee witnesses who likely had access to alarms"). Further, Golson's extensive criminal record—placing him in the highest criminal history category of VI—combined with involvement in fresh, publicly displayed, violent criminal conduct lends credence to the notion that Golson was incentivized to flee at any cost. *See United States v. Conley*, 131 F.3d 1387, 1391 (10th Cir. 1997) (noting that a relevant factor to apply the § 3C1.2 enhancement was that "the Appellants were leaving the scene of a very serious crime, providing a motive to take desperate—and reckless—measures to flee and elude capture"). The preceding facts are buttressed by the fact that once the vehicle crashed after speeding through a neighborhood, Golson immediately hopped out of the vehicle and ran away from the car and his fellow occupants.

Notably, we have previously viewed similar conduct as an indication that a passenger likely actively participated in the reckless flight. *See Byrd*, 689 F.3d at 641 (noting as a relevant fact in applying § 3C1.2 that "[o]nce the reckless, high-speed chase ended, Byrd continued to flee on foot"); *United States v. Thompson*, No. 97-3166, 1998 WL 553050, at *2 (6th Cir. Aug. 19, 1998) (explaining that defendant's "abandoning the car following the chase" was one of the factors "indicat[ing] active involvement" in reckless vehicle flight). Finally, six weeks later, Golson was involved in another shooting and there, too, he immediately fled the scene of the crime. Given Golson's pattern and history of flight after dangerous situations, it is reasonable to infer that he was an active participant rather than a passive presence in the reckless flight from the scene of the crime in April 2021. *See, e.g.*, *Byrd*, 689 F.3d at 642 (explaining that for a defendant with prior history of reckless flight from the police, "it was not clearly erroneous to infer that [the defendant's] participation in yet another reckless flight is more likely to be active than passive"). We therefore find no error, plain or otherwise, in the district court's application of § 3C1.2.

## III.

For the foregoing reasons, we **AFFIRM**.