NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0020n.06

No. 25-3040

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 09, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| SOUMYA RUDRA, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge, and BOGGS and BLOOMEKATZ, Circuit Judges.

BOGGS, Circuit Judge. Soumya Rudra pleaded guilty to three federal sex offenses: travel in interstate commerce for the purpose of engaging in illicit sexual conduct, transportation of visual depictions of real minors engaged in sexually explicit conduct, and possession of child pornography. The district court sentenced Rudra to 360 months in prison and levied a $50,000 fine. Rudra challenges his sentence as procedurally and substantively unreasonable. We affirm.

**I**

Soumya Rudra engaged in sexually explicit conversations with several minor girls from approximately 2020 to 2023. On November 23, 2023, Rudra, who was 41 years old, traveled from his Pennsylvania residence to Ohio with plans to meet one of these minors ("Victim 1"), with whom he had been communicating for several months. He rented a hotel room and picked Victim 1 up from her residence the next morning. Rudra returned with her to the hotel and, over her expressed nervousness, removed her clothes and engaged in sexual intercourse. Rudra and Victim 1 then reclothed, after which Rudra again removed the minor's clothes and engaged in sexual

intercourse. The two acts of sexual intercourse occurred within approximately four hours. Afterwards, Rudra and Victim 1 left the hotel to eat dinner before returning to the hotel.

Tips from Victim 1's mother and a friend led local police to discover Rudra with the minor at the hotel that evening. Upon questioning, Rudra claimed that Victim 1 was 16 years old, Ohio's age of consent. Victim 1, meanwhile, indicated that she told Rudra she was 15 years old; in reality, she was only 14. Police arrested Rudra and brought him to the station for questioning. Investigators conducted an initial review of the contents of Rudra's phone and noticed conversations with seven other minor females on a Google chat application. Authorities released Rudra the next day without filing charges but retained his phone for further investigation.

After returning to his Pennsylvania home, Rudra accessed the Google chat application through another device and deleted the email address associated with that account. His actions irretrievably destroyed chats with seven underage girls. Agents applied for a search warrant, but Google could not restore this data, forcing investigators to rely on notes based on their initial observations of the conversations.

Rudra did not completely thwart the investigation, however. Forensic analysis uncovered 2 images and 18 videos depicting child pornography on Rudra's phone. Investigators identified three unique victims: Victim 1, an 11-year-old victim ("Victim 2"), and a victim of unknown age believed to live abroad. In an interview with law-enforcement officers in July 2024, Victim 2 reported that Rudra engaged her in sexual conversations and requested nude photographs, prompting her, at his behest, to create and send him images depicting herself masturbating.

Federal authorities arrested Rudra on December 4, 2023, pursuant to a criminal complaint. A grand jury in the Northern District of Ohio returned a three-count indictment against him on January 9, 2024. Count 1 charged Rudra with traveling in interstate commerce for the purpose of

engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). Count 2 charged him with interstate transportation of visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1), (b). Count 3 alleged possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The statute charged in Count 1, the most serious offense, authorized a term of imprisonment for 30 years or a fine, or both. 18 U.S.C. § 2423(b). Rudra pleaded guilty to all three counts on August 15, 2024, without a plea agreement.

In preparation for sentencing, a probation officer calculated an advisory Sentencing Guidelines range of 360 months to 720 months, and fine of $50,000 to $250,000, based on a total offense level of 42 and criminal history category of I. To reach this calculation, the probation officer grouped counts 2 and 3 into "Count Group 1." Both offenses in Count Group 1 correspond to an offense level specified in USSG §2G2.2. Applying USSG §2G2.2(c)(1), however, the probation officer determined that the more serious production-of-child-pornography Guideline at USSG §2G2.1, which carries a base offense level of 32, should govern based on Rudra's conduct toward Victim 2. Starting from that baseline, the probation officer applied three enhancements: a 4-level victim-age enhancement under USSG §2G2.1(b)(1)(A), a 2-level computer-usage enhancement under USSG §2G2.1(b)(6)(B)(i), and a 2-level obstruction-of-justice enhancement under USSG §3C1.1. This process generated an adjusted offense level of 40 for Count Group 1.

The probation officer next analyzed the adjusted offense level for Count 1. Starting with the base offense level of 24 under USSG §2G1.3(a)(4), the probation officer computed an adjusted offense level of 30 after applying 2-level enhancements for undue influence, computer usage, and engaging in a sex act. USSG §2G1.3(b)(2)(B); USSG §2G1.3(b)(3)(A); USSG §2G1.3(b)(4)(A).

Having computed an adjusted offense level of 40 for Count Group 1 and 30 for Count 1, the probation officer determined a combined adjusted offense level of 40 through the multiple-

count-adjustment process described in Chapter 3 of the Guidelines. Because Count Group 1's adjusted offense level exceeded Count 1's adjusted offense level by 10, the probation officer concluded that Count 1 did not require any offense-level increase under USSG §3D1.4.

Finishing the offense-level calculation, the probation officer increased the combined adjusted offense level by 5 under USSG §4B1.5(b)(1)'s enhancement for engaging in a pattern of activity involving prohibited sexual conduct and deducted 3 levels for Rudra's acceptance of responsibility. This yielded a total recommended offense level of 42. Paired with Rudra's criminal history category of I, the probation officer's calculations corresponded to an advisory Guidelines range of 360 months to 720 months, and a fine of $50,000 to $500,000.

Rudra objected to the probation officer's grouping, cross-reference, and enhancement decisions. The district court overruled those objections after hearing argument at Rudra's sentencing hearing. Proceeding to pronounce sentence, the district court made extensive factual findings regarding the nature and circumstances of the offense and Rudra's history and characteristics. The district court summarized the Pre-Sentence Report (PSR), which documented the investigation, Rudra's sophisticated background as a Ph.D.-educated scientist for a large pharmaceutical company, his history of physical and mental-health challenges, and his finances. The PSR found that Rudra had a net worth of more than $344,000, with about $150,000 held in bank accounts that he owned personally or jointly with his ex-wife. The district court also considered letters of support and a psychological evaluation submitted on Rudra's behalf. The psychological report, prepared by a clinical and forensic psychologist retained by Rudra's attorney, claimed a link between Rudra's conduct and his depressive condition, exacerbated by physical pain, marital challenges, and substance abuse.

Ultimately, on Count 1, the court sentenced Rudra to 360 months of imprisonment—the statutory maximum and the low end of the advisory Guidelines range—to be served concurrently with a 240-month sentence of Count 2 and a 120-month sentence on Count 3. The court also levied a $50,000 fine, in addition to $22,300 in various assessments.

Rudra timely appealed and we exercise jurisdiction under 28 U.S.C. § 1291.

## II

We review sentences for procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Jeter*, 721 F.3d 746, 755 (6th Cir. 2013). Where a procedural challenge appeals the application of particular Guidelines provisions, we review the district court's interpretations of the Guidelines de novo and its factual findings for clear error. *United States v. Coleman*, 158 F.4th 687, 693 (6th Cir. 2025). We disregard errors that affect neither the advisory Guidelines range nor the sentence imposed. Fed. R. Crim. P. 52(a); *United States v. Cruz*, 976 F.3d 656, 663 (6th Cir. 2020).

The district court imposed a procedurally and substantively reasonable sentence. The district court's offense-level calculation rests upon sufficient facts to justify each of the relevant Guidelines provisions and enhancements. Having appropriately determined an offense level of 42, the district court did not abuse its discretion in sentencing Rudra within the corresponding advisory range. It also properly accounted for the totality of Rudra's financial circumstances in levying a fine that he could afford with his current assets.

## A

A sentence is procedurally reasonable if the district court properly calculates the Guidelines range, treats that range as advisory, considers the sentencing factors in 18 U.S.C. § 3553(a), refrains from considering impermissible factors, does not clearly err in finding facts, and adequately

explains its sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51). The propriety of the district court's Guidelines calculation depends on how it grouped offenses, identified the relevant base-offense levels, and applied offense- and offender-specific enhancements. *See Cruz*, 976 F.3d at 661–64.

Rudra argues that the district court imposed a procedurally unreasonable sentence because its Guidelines calculation derived from erroneous grouping and enhancement decisions. As in the district court, Rudra contends that Count 1 should be grouped with the other offenses, that the production cross-reference should not apply to Count Group 1, and that the enhancements for victim age, computer usage, obstruction, undue influence, and pattern of prohibited sexual conduct should not apply. The district court did not abuse its discretion, however, because each Guidelines provision embraces Rudra's conduct. The district court accordingly arrived at the proper offense level, which would not change even if the court had grouped Count 1 with the other offenses.

1

We first evaluate the district court's Guidelines calculations for Count Group 1, which generated a higher adjusted offense level than Count 1. Rudra claims that the district court started with the wrong base offense level by applying the cross-reference for production of child pornography under USSG §2G2.2(c)(1) and compounded the error by improperly applying enhancements for victim age, computer usage, and obstruction of justice. But we find no error.

*First*, USSG §2G2.2(c)(1)'s cross-reference applies because Rudra caused Victim 2 to create new images depicting child pornography. The production cross-reference applies if "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG §2G2.2(c)(1). By its own terms, this provision contains two components:

covered conduct and mental state. Production of child pornography, defined as the creation of new material, lies at the heart of the Guideline's covered conduct. *See United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013) (defining production of child pornography); *United States v. Garcia*, 411 F.3d 1173, 1179 (10th Cir. 2005) (explaining that the Guideline also punishes "the active solicitation for the production" of child pornography). While we have not addressed the issue, other circuits have held that a defendant possesses the requisite mental state if he acts with even a secondary purpose of creating a visual depiction of sexually explicit material. *United States v. Veazey*, 491 F.3d 700, 706–07 (7th Cir. 2007) (citing cases).

Rudra's conduct falls within the Guideline's proscription because he caused Victim 2 to produce new sexually explicit images. He claims that the evidence showed nothing "beyond a generic solicitation for an image that might already exist"—in other words, that he received child pornography from Victim 2 but did not cause her to produce new material. Appellant Br. at 14. But the district court did not clearly err in finding to the contrary. District judges need find facts for sentencing purposes only by a preponderance of the evidence. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). They may consider any source of evidence with a "minimal indicium of reliability beyond mere allegation." *United States v. Lalonde*, 509 F.3d 750, 768 (6th Cir. 2007) (citation modified). This "relatively low hurdle" permits district judges to consider information without regard for the rules of evidence or confrontation requirements. *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (citation modified).

In overruling Rudra's objection that he received, but did not produce, child pornography, the district court relied on the government's representation at sentencing that Victim 2 told investigators that she "created the picture at [Rudra]'s behest." R.68 at 12–13. This assertion bears more than a minimal indicium of reliability because of its specificity and its consistency with other

record evidence. Unlike cases where the district court relies on mere assertions without any factual basis, detail, or explanation, this proffer of hearsay evidence bore specificity that allowed the court to assess its reliability and afforded Rudra the opportunity to attack its veracity. *Cf. United States v. Lowenstein*, 108 F.3d 80, 83–84 (6th Cir. 1997). The government did not merely allege that Rudra produced child pornography; rather, it cited specific evidence that, if credited, would prove that allegation. Moreover, other sources in the record reinforce the conclusion that Rudra produced new material. Rudra admitted in his plea allocution that he "coerc[ed] the victims to send [him] pictures and videos of the victims engaged in sexually explicit conduct, including the victims masturbating while fully nude." R.46 at 21–22. And the PSR recounted Victim 2's interview with investigators consistent with the government's oral representation by stating that the minor "had sent [Rudra] a video depicting herself engaging in masturbation." R.50 at 6. All of this provided a sufficient basis for the district court to conclude by a preponderance of the evidence that Rudra produced child pornography.

Rudra acted with the requisite mental state to satisfy the enhancement's second element. Plain-error review governs Rudra's mental-state argument because he did not object to the district court's failure to make a purpose finding. *United States v. Golson*, 95 F.4th 456, 461–62 (6th Cir. 2024). A defendant cannot surmount the demanding hurdles of plain-error review if the record supports the application of a particular enhancement. *See id.* at 462. But while other circuits have cautioned against reducing USSG §2G2.2(c)(1) to a strict-liability provision, *see United States v. Crandon*, 173 F.3d 122, 129–31 (3d Cir. 1999), Rudra points to no binding precedent in this circuit that requires district courts to make a particular purpose finding—a failure that by itself precludes a finding of plain error. *United States v. Prather*, 138 F.4th 963, 976 (6th Cir. 2025). Moreover, our sister circuits appear to agree that a defendant need only act with a secondary purpose of

producing a visual depiction of sexually explicit conduct, not necessarily a sole purpose. *See Veazey*, 491 F.3d at 706–07. Even if we departed from that interpretation to require a finding that the defendant acted with the sole purpose of producing such a depiction, we would not find plain error in the application of that enhancement to an adult whose entire relationship with an 11-year-old girl centers on exchanging sexually explicit messages and images.

*Second*, the district court properly applied a 4-level victim-age enhancement under USSG §2G2.1(b)(1)(A) because Victim 2 was 11 years old when Rudra prompted her to create and send him explicit images. Rudra maintains that the enhancement should not apply because Rudra did not know her age. But the enhancement's plain text does not impose any knowledge requirement, actual or constructive. The text simply states that "if the offense involved a minor who had not attained the age of twelve years, increase by 4 levels." USSG §2G2.1(b)(1) (citation modified). The Sentencing Commission knows how to impose knowledge requirements. *See, e.g.*, USSG §2G2.1(b)(3). It did not here. Where an enhancement's "language is unambiguous, our analysis begins and ends there." *United States v. Gould*, 30 F.4th 538, 543 (6th Cir. 2022).

*Third*, our precedent squarely forecloses Rudra's claim that the 2-level enhancement for computer usage should not apply because his computer usage to communicate with Victim 2 "was merely incidental and inherent to the offense." Appellant Br. at 17. The enhancement applies if the offense involved "the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct." USSG §2G2.1(b)(6)(B) (citation modified). By its own terms, the Guideline does not require the government to prove that computer usage played more than an "incidental" role in the offense. (Even if it did, the government could surely sustain that burden here where Rudra relied *exclusively* on computers and the internet to coerce Victim 2 to send him explicit photographs). And the

frequency or "inherency" with which the enhancement applies does not undermine its validity, especially where the enhancement addresses a real harm—the potentially permanent capture and retention of a record of child abuse—and Congress insists on its widespread usage. *See United States v. Lynde*, 926 F.3d 275, 279–81 (6th Cir. 2019) (rejecting "wholesale" challenges to comparable USSG §2G2.2 enhancements based on their alleged failures to distinguish among offenders).

*Fourth*, Rudra obstructed justice, subjecting him to USSG §3C1.1's 2-level enhancement, because he deleted his Google chats with minors despite knowing that the police had retained his cell phone for further investigation. The enhancement applies if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction, and (2) the obstructive conduct related to [the offense of conviction or a closely related offense]." USSG §3C1.1.

Rudra initially attacks the application of this enhancement by claiming that "there was no actual obstruction" because "no material evidence was withheld from law enforcement or the court; the [Google] messages were recovered in full." Appellant Br. at 26–27. This argument misstates the law and misrepresents the facts. By its plain text, which references completed acts and attempts alike, the Guideline punishes obstruction regardless of whether it results in evidentiary destruction. More importantly for this case, however, Rudra *did* destroy evidence by deleting his Google chats. The PSR recounts how investigators initially noticed chats with minors saved on Rudra's Google application but returned to find those chats blank. Investigators obtained a search warrant to retrieve the deleted data from Google, but to no avail—the chats were permanently lost.

Rudra committed this obstruction willfully because he knew that investigators had retained his phone, which provided access to the Google chats. To satisfy the Guideline's definition, obstructive conduct must occur with the defendant's "knowledge that he . . . is the subject of an investigation." *United States v. Boyd*, 312 F.3d 213, 217 (6th Cir. 2002) (citation modified). A defendant need not be detained or charged to meet this standard. Rather, knowledge of a pending investigation can be established when a law-enforcement officer questions a defendant about suspected offenses and indicates that the investigation will continue. *Id.* at 215, 217–18 (affirming obstruction enhancement where a probationer deleted evidence of child pornography in between an initial home visit by a probation officer, who announced that he would return in a few days for a more thorough investigation, and that subsequent visit). The enhancement applies regardless of whether authorities filed charges before obstructive conduct occurred or whether the same authorities who initiated the investigation wind up prosecuting the defendant. *Ibid.*; *see also* Amendment 693 to the Sentencing Guidelines (Nov. 1, 2006).

Just as a defendant receives notice of a pending investigation when told to expect a follow-up interview, so too when the defendant knows that police have retained evidence of suspected crimes. Because Rudra deleted the Google chats despite knowing that police had retained a device capable of accessing those chats, the enhancement properly applies, no matter Rudra's initial release from custody without charges nor the case's evolution from a state to federal investigation.

2

Because we find no error in the calculations that generated an adjusted offense level of 40 for Count Group 1, we need not resolve Rudra's claims regarding the Guidelines calculations for Count 1 because that offense did not affect Rudra's ultimate offense level. Even after including three enhancements (two of which, computer usage and undue influence, Rudra challenges), Count

1 generated an adjusted offense level of 30—too low to increase the offense level under the multiple-count-adjustment process. *See* USSG §3D1.4. This would render harmless any error in excluding Count 1 from Count Group 1 and applying the undue-influence and computer-usage enhancements under USSG §2G1.3. *See Cruz*, 976 F.3d at 663. Any such error "must be disregarded." *Ibid.* (quoting Fed. R. Crim. P. 52(a)).

3

Rudra's final procedural challenge, appealing the district court's imposition of a 5-level enhancement under USSG §4B1.5(b), fails because Rudra's encounter with Victim 1 and communications with Victim 2 constitute a pattern of activity involving prohibited sexual conduct.

As relevant here, the Guideline applies if "the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG §4B1.5(b). Prohibited sexual conduct includes interstate travel for the purpose of meeting a minor for sex and production of child pornography. *See* USSG §4B1.5 Application Note 4(A)(i), (ii). A defendant engages in a "pattern of activity" if prohibited sexual conduct occurs "on at least two separate occasions." *United States v. Paauwe*, 968 F.3d 614, 618 (6th Cir. 2020) (quoting USSG §4B1.5 Application Note 4(B)(i)). Such conduct must be "repeated and related" but "could well encompass more than one victim" and may involve different types of prohibited sexual conduct. *Id.* at 617; *United States v. Broxmeyer*, 699 F.3d 265, 270, 285–86 (2d Cir. 2012) (identifying attempted production of child pornography with one victim and sexual intercourse with a different victim as separate occasions of prohibited conduct).

Perhaps, as the district court concluded, Rudra's multiple acts of sexual intercourse with Victim 1 on November 24, 2023, constitute two occasions of prohibited sexual conduct. The district court cited the Fifth Circuit's observation that no circuit court "has overturned the application of §4B1.5(b)(1) because the 'separate occasions' of prohibited conduct occurred too close together

in time." *United States v. Sadeek*, 77 F.4th 320, 327 (5th Cir. 2023).  Indeed, the Guideline's text places no express temporal minimum to recognize separate occasions, and Rudra's two sexual assaults of Victim 1—which occurred within four hours in the same hotel room—were separated by a period when the two reclothed.  *But cf. Wooden v. United States*, 595 U.S. 360, 370 (2022) (interpreting the word "occasion" in the Armed Career Criminal Act to hold that a defendant who burgles ten storage units on the same night, at the same place, and by the same means commits his crimes on one occasion, even though that conduct could support ten convictions).

Regardless of whether Rudra's two acts of sexual intercourse with Victim 1 constitute one occasion or two, we may affirm by broadening the lens to evaluate Rudra's conduct with Victim 1 and Victim 2.  *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) (noting our authority to affirm on any grounds supported by the record, even for direct criminal appeals).  At a minimum, his interstate travel to have sex with Victim 1 on November 24, 2023, counts as one occasion of prohibited sexual conduct and his production of child pornography through Victim 2 over an extensive period of online communication supplies a second.  His conduct can trigger the enhancement even though he was never charged for production of child pornography.  *United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019).  The district court did not err in applying the enhancement.

B

Rudra next mounts a substantive reasonableness challenge, claiming that the total offense level "overstated the severity of his conduct and necessitated a variance to ensure proportionality and fairness in sentencing."  Appellant Br. at 33.  A variance refers to a sentence outside the advisory Guidelines range based on the weighing of the 18 U.S.C. § 3553(a) factors.  *United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam).  An appeal of a district court's denial

of a variance confronts a high bar: we review for abuse of discretion and give "due deference" to the district court's determination of whether the § 3553(a) factors justify a variance. *United States v. Robinson*, 892 F.3d 209, 213 (6th Cir. 2018) (quoting *Gall*, 552 U.S. at 51). Because the district court did not abuse its discretion in weighing those factors, Rudra's substantive challenge fails.

A sentence is substantively unreasonable if the district court "arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *Id.* at 213 (citation modified). A sentence is not substantively unreasonable merely because we "might reasonably [ ] conclude[] that a different sentence was appropriate." *Gall*, 552 U.S. at 51. *Gall* states that circuit courts may presume that a within-Guidelines sentence is substantively reasonable. *Ibid*. We apply that rebuttable presumption in this circuit. *United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023).

The district court's 360-month sentence—at the low-end of the advisory Guidelines range and the statutory maximum for Count 1—passes this deferential review. The district court thoroughly considered § 3553(a)'s factors and applied them to the facts, both favorable and unfavorable to Rudra. The judge weighed Rudra's offense conduct against his personal background and criminal history. He accounted for various mitigation evidence, including letters of support from Rudra's family and friends in addition to Rudra's history of mental-health struggles, marital stress, and substance abuse, as expressed by Rudra himself and through a psychological report submitted on his behalf. The judge explained his reasoning in detail, especially his skepticism of Rudra's argument that he presented a low risk of recidivism. His analysis betrayed no sign that he relied on impermissible factors. And he explained how Rudra's sentence would comport with the typical penalties given to defendants with the same offense level and criminal history.

The district court fashioned "a stiff, but reasonable" sentence. *Rayyan*, 885 F.3d at 442–43. That it balanced the § 3553(a) factors differently than Rudra would prefer offers "no basis for second guessing that judgment." *Id.* at 443.

C

Finally, Rudra appeals the $50,000 fine as procedurally and substantively unreasonable, claiming that the district court erred by basing its sentence on Rudra's current assets without accounting for his future earning capacity. Rudra did not challenge the procedural reasonableness of the fine below, so we review procedural reasonableness for plain error and substantive reasonableness for abuse of discretion. *United States v. Lumbard*, 706 F.3d 716, 725, 728 (6th Cir. 2013).

Rudra cannot surmount these hurdles. The district court did not abuse its discretion in finding that a defendant worth more than $340,000 could pay a fine of $50,000, the low end of the Guidelines range. In fashioning a fine, a district court must consider "the defendant's income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1); *see also* USSG §5E1.2. Fines must be "punitive," and the defendant bears the burden of proving "that he is unable to pay and is not likely to become able to pay any fine." USSG §5E1.2(a), (d). At sentencing, the district court expressly acknowledged that Rudra's "incarceration has obviously adversely affected his ability to earn monthly income or earn income." R.68 at 48. Nevertheless, the court found Rudra capable of paying a fine based on the amount and liquidity of his current assets.

Rudra's contention that a court cannot fine a defendant with substantial, liquid net worth merely because incarceration will limit his earning potential would undermine § 3572(a)(1)'s requirement to consider the defendant's present financial circumstances. No factor alone determines whether a defendant can pay a fine. Just as a court may fine a defendant with low current assets

but higher earning potential, so too may a court fine a defendant with high current assets and lower earning potential.  *Cf. United States v. May*, 430 F. App'x 520, 528–29 (6th Cir. 2011).

For the foregoing reasons, we **AFFIRM**.