NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0187n.06

Case No. 25-3730

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 27, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ERNEST SHROPSHIRE, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; DAVIS and RITZ, Circuit Judges.

DAVIS, Circuit Judge. Ernest Shropshire pleaded guilty to conspiracy to possess with intent to distribute methamphetamine and fentanyl and to distribution of methamphetamine and fentanyl. The district court sentenced him to an above-Guidelines sentence of 121 months in prison. On appeal, Shropshire argues that his sentence is procedurally and substantively unreasonable. We disagree and AFFIRM.

**I.**

*A. Factual Background*

In 2023, Ernest Shropshire served as a source of fentanyl and methamphetamine for local dealers in Akron, Ohio. Local law enforcement partnered with the Bureau of Alcohol, Tobacco, Firearms and Explosives to investigate Shropshire and his co-conspirators (Phillip August, Andrew Corbin, William Morrison, and Calvin Roberts). Investigators learned that Shropshire

received the drugs from California, then supplied them to Roberts and Corbin. And Roberts sold to Corbin and others. Corbin and the others then sold the drugs from Corbin's residence or delivered them directly to customers.

By his own admission, Shropshire was selling "pounds of methamphetamine to Mr. Roberts at a time" and had taken "a pound [of fentanyl] to him before," though it "depend[ed] on what came." (Sealed Sent. Tr., R. 135, PageID 1154–56). Other reports indicated he usually sold a pound or two multiple times a week. And more than one source said Shropshire had access to as much as five pounds of methamphetamine at a time and ten pounds of fentanyl.

With the help of a confidential source, investigators conducted two controlled buys of methamphetamine and fentanyl in June and July 2023. The June transaction involved a total of 449.7 grams of methamphetamine and 3.006 grams of fentanyl, sourced by Shropshire. And the July transaction included 26.7 grams of a mixture and substance containing fentanyl and xylazine. Shropshire was also held responsible for methamphetamine and a mixture and substance containing methamphetamine found in Corbin's home that in aggregate totaled over 100 grams.

*B. Procedural Background*

Shropshire pleaded guilty to conspiracy to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 846; and distribution of methamphetamine and fentanyl in June 2023 and distribution of fentanyl in July 2023, both in violation of 21 U.S.C. § 841(a)(1).

The presentence report ("PSR") prepared by a probation officer using the United States Sentencing Guidelines ("U.S.S.G.") calculated Shropshire's base offense level based on drug quantity at 32. The PSR recommended adding two levels for Shropshire's role as a leader or manager of the conspiracy under U.S.S.G. § 3B1.1(c). And from there (level 34), it recommended

a three-level reduction for Shropshire's acceptance of responsibility under U.S.S.G. § 3E1.1, thus bringing his total offense level to 31. With a criminal history category III, Shropshire's Guidelines range under the PSR was 135 to 168 months.

In their Rule 11 plea agreement, however, the parties had agreed on a different Guidelines computation. Unlike the PSR, the parties did not apply the two-level leader or manager enhancement. So they contemplated a base offense level of 32, adjusted down to a total offense level of 26 for acceptance of responsibility and other applicable guidelines. Under the PSR scoring, Shropshire's Guidelines range would be 97 to 121 months, while under the terms of the plea agreement, it would be 78 to 97 months.

Before sentencing, the district court notified the parties that it might vary upward based on a handful of factors in 18 U.S.C. § 3553(a). At Shropshire's request, the district court conducted an evidentiary hearing before sentencing. A main issue at the hearing was the quantity of drugs Shropshire acquired and sold. Though Shropshire and an investigating officer testified on that issue, the sources underlying the five- and ten-pound amounts came from state-level interviews and a video-recorded, state-level proffer. The court adjourned sentencing to allow review of the proffer video.

When sentencing continued, the district court advised that it had reviewed the state proffer, as well as body camera footage from a March 2023 domestic dispute, and that it would consider those when sentencing Shropshire. The court also heard from Shropshire's significant other, declined to apply the two-level leader-manager enhancement under U.S.S.G. § 3B1.1(c), and overruled an objection about the amount of methamphetamine at issue.

Shropshire advocated for a sentence at the low end of the 78-to-97-month Guidelines range, while the government requested one at the top. The district court did neither. It raised the total

offense level from 26 to 28 based on the § 3553(a) factors. Doing so increased Shropshire's Guidelines range to 97 to 121 months. Then, the district court sentenced him at the top of that range, to 121 months in prison. Shropshire now appeals.

## II.

We review a district court's sentencing determination for reasonableness. *United States v. Golson*, 95 F.4th 456, 461 (6th Cir. 2024). This inquiry has a procedural component and a substantive component. *Id.* Typically, we review challenges to the reasonableness of a sentence for an abuse of discretion. *United States v. Hoyle*, 148 F.4th 396, 405 (6th Cir. 2025). That remains true for Shropshire's substantive-reasonableness challenge. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019); *see also Holguin-Hernandez v. United States*, 589 U.S. 169, 173–74 (2020) (concluding that "[n]othing more is needed to preserve the claim" that a sentence is substantively unreasonable than a defendant's "advocat[ing] for a sentence shorter than the one ultimately imposed").

But when a defendant "fails to appropriately preserve a procedural reasonableness argument, we review it for plain error only." *United States v. Sherrill*, 972 F.3d 752, 768–69 (6th Cir. 2020); *see United States v. Coleman*, 835 F.3d 606, 615 (6th Cir. 2016) (requiring specific objection to reasonableness of sentence after district court asks for objections). Shropshire did not raise a specific objection to the procedural reasonableness of his above-Guidelines sentence when the district court asked the *Bostic* question. *See United States v. Bostic*, 371 F.3d 865, 871–73 (6th Cir. 2004); *Coleman*, 835 F.3d at 615. So plain-error review applies to this aspect of his challenge. *See Coleman*, 835 F.3d at 615. To establish plain error, Shropshire must show a clear or obvious error that affected both his substantial rights and the "fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation modified). An error in sentencing "affects a defendant's

substantial rights when there is a reasonable probability that, but for the error, the defendant would have received a more favorable sentence." *Id.* (citation modified).

Finally, determining whether a district court's above-Guidelines sentence was a "departure" or "variance" is a question of law that we review *de novo*. *United States v. Denny*, 653 F.3d 415, 419 (6th Cir. 2011). Regardless, barring a procedural error, we are "highly deferential" to district courts in their sentencing decisions. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). So even if we may have reasonably concluded that "a different sentence was appropriate," that is not enough to disturb a district court's sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III.

### A. Departure or Variance

Shropshire attacks his sentence on two fronts. First, he challenges its procedural reasonableness, based on the district court's failure to justify the increase in the Guidelines under U.S.S.G. § 4A1.3(a)(2). Second, he challenges as substantively unreasonable the district court's weighing of the § 3553(a) factors in its decision to go beyond the agreed-upon Guidelines range. By framing his argument in this way, Shropshire contends that his sentence was unreasonable as both a "departure and variance." (Appellant Br., ECF 17, 9 (citation modified)). But there is little evidence that the district court intended the increase here as a departure.

As Shropshire recognizes in his briefing, departures and variances are distinct concepts. *Denny*, 653 F.3d at 419. A "departure" happens when a district court applies "a particular Guidelines provision, [like] § 4A1.3 or § 5, Part K" to increase or decrease the Guidelines range. *Id.* (citation omitted). But a "variance" occurs when a district court selects "a sentence outside of

the advisory Guidelines range based upon [its] weighing of one or more of the sentencing factors of § 3553(a)." *Id.* (citation omitted).

Shropshire's above-Guidelines sentence was a variance. The district court never described its decision to apply a higher Guidelines range as a departure and it never invoked any particular Guidelines provision as a basis for the increase. Instead, the district court discussed the § 3553(a) factors at length and stressed its reliance on them in imposing the 121-month sentence. *See id.* at 420 (explaining that no "magic words" are required for a sentence to be deemed reasonable). Consistent with its explanation at sentencing, the district court also indicated in its statement of reasons that it varied upward two levels based on several § 3553(a) factors. Also, the district court notified the parties before sentencing of a "possible upward variance" based on several § 3553(a) factors. (Not. of Upward Var., R. 88, PageID 639); *see United States v. Woody*, No. 22-3241, 2023 WL 2137358, at *3 (6th Cir. Feb. 21, 2023) (considering notice of potential upward departure or variance). So we can safely say that the district court varied upward.

*B. Procedural Reasonableness*

Based on the above discussion, Shropshire's attack on the district court's failure to address the factors in U.S.S.G. § 4A1.3(a)(2), as a matter of procedural reasonableness, is misplaced. In that regard, Shropshire contends that the district court considered his criminal history to be underrepresented by the Guidelines and upwardly adjusted his sentencing range based on this conclusion, without applying any of the § 4A1.3(a)(2) factors. So, according to Shropshire, the resulting sentence was procedurally unreasonable. Yet, since the district court did not depart from the Guidelines under § 4A1.3, it was not required to comport with that section's requirements. Thus, its silence as to the referenced factors does not render his sentence procedurally unreasonable.

To be sure, a procedurally unreasonable sentence can result when the district court "fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *Golson*, 95 F.4th at 461 (citation omitted). But none of those failures occurred here. Before imposing sentence, the district court properly calculated the Guidelines range—sustaining Shropshire's objection to application of the leader-manager enhancement. The court treated the Guidelines as advisory and, as discussed in Subsection D, did not rely on any clearly erroneous facts. And the district court spent significant time explaining its consideration of the § 3553(a) factors and, in so doing, adequately explained its sentence. So, seeing no plain error in the court's procedural approach, we are satisfied that Shropshire's sentence was procedurally reasonable.

## C. *Substantive Reasonableness*

Likewise, Shropshire's sentence was substantively reasonable. Shropshire contends that the district court abused its discretion by failing to properly evaluate his background and mitigating circumstances, considering uncharged conduct, and overemphasizing his criminal history. But his arguments lack merit.

A challenge to the substantive reasonableness of a sentence is an argument that the sentence is "greater than necessary[] to comply" with the general purposes of sentencing. *Gall*, 552 U.S. at 50 n.6 (citation omitted). That is, the sentence is "too long," and the district court put "too much weight on some of the § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442.

Shropshire first argues that the court failed to properly consider his background and mitigating circumstances. Yet the court thoroughly addressed Shropshire's background, history, and characteristics. *See* 18 U.S.C. § 3553(a)(1). True, the district court spent considerable time

describing Shropshire's criminal past. This included cataloging Shropshire's "extensive criminal history," which began in his youth and culminated in adult convictions for aggravated robbery, obstructing official business, drug abuse, disorderly conduct, and possession of cocaine. (Final Sent. Tr., R. 136, PageID 1205). In the district court's view, the aggravated-robbery conviction and domestic-violence charges demonstrated a "history of violence." (*Id.* at PageID 1208). Shropshire's "history of noncompliance while incarcerated" and numerous violations while on supervised release or probation also raised concerns. (*Id.*). Moreover, the court observed that Shropshire's own family knew he trafficked drugs. These were all appropriate considerations for the court. And while Shropshire argues that the district court assigned outsized weight to his aggravated-robbery conviction given that his criminal history category already accounted for it, the record does not bear this out. Indeed, the district court discussed this conviction mainly in the context of holding him accountable for committing these drug offenses a short time after his release for that conviction and completion of a reentry program.

On the positive side, the district court acknowledged Shropshire's strong family ties, his lack of any mental-health diagnoses, his completion of anger-management and domestic-violence programs, and his education and employment history as mitigating facts. The district court considered counsels' arguments at the hearing and in their sentencing memos, the PSR, and reports and video related to the state-level proffer and March 2023 domestic dispute. Together, these sources helped the court to develop an informed view of Shropshire's history and characteristics. Thus, we cannot conclude from the record that the court failed to consider Shropshire's background and mitigating circumstances.

The court also examined other relevant § 3553(a) factors, starting with the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). In addition to the information in the PSR,

the district court took into consideration Shropshire's acknowledgement that he had sold pounds of methamphetamine and at least a pound of fentanyl. Based on evidence at sentencing, it found that the drug amounts attributable to Shropshire were "extraordinary or high" and made him a "large-scale drug trafficker" who had been operating for "quite some time." (Final Sent. Tr., R. 136, PageID 1169, 1202, 1204). The court thus found Shropshire responsible for "far more" methamphetamine and fentanyl than was captured by his plea agreement. (*Id.* at PageID 1169).

The district court also addressed the negative impact of Shropshire's drug operation on the community. And far from ignoring the sentences that similarly situated defendants have received, the court acknowledged that there would "be some disparity" with Shropshire's sentence because of the "particular and unique facts" of his case. (*Id.* at PageID 1206); *see* 18 U.S.C. § 3553(a)(6).

In the district court's view, an upward variance was warranted because of Shropshire's quick recidivism after his early release from prison and completion of a reentry program, the "volume of drugs" he trafficked, and the "sheer volume" of his criminal conduct. (Final Sent. Tr., R. 136, PageID 1210). The court did not find this to be an "unremarkable, average drug distribution case," as Shropshire characterizes it. (Appellant Br., ECF 17, 16). That Shropshire was a "supplier of large quantities" of dangerous and addictive drugs distinguished him from low-level dealers. (Final Sent. Tr., R. 136, PageID 1210). And "the sheer volume of . . . other criminal conduct" reflected in Shropshire's criminal history was "telling" in the court's eyes. (*Id.*). Considering all of this, the district court concluded that a longer sentence was necessary specifically to deter Shropshire and generally to deter others from committing such crimes.

Shropshire may have preferred a different weighing of the § 3553(a) factors. But that does not mean the court imposed an unreasonable sentence. *See United States v. Robinson*, 892 F.3d

209, 216 (6th Cir. 2018). On the contrary, the district court considered the relevant factors and provided ample support for its decision. Thus, we see no abuse of discretion.

### D. Final Considerations

Finally, Shropshire's additional arguments do not sway our conclusion as to either procedural or substantive reasonableness.

First, the district court's consideration of Shropshire's drug-sourcing activities that were "well beyond" his plea was not improper. (Appellant Br., ECF 17, 13–14). District courts may consider uncharged criminal conduct to fashion a sentence, *see Rayyan*, 885 F.3d at 441, with "[n]o limitation" on "information concerning the background, character, and conduct" of a defendant. 18 U.S.C. § 3661; *see also Pepper v. United States*, 562 U.S. 476, 488–89 (2011). And district courts can make "reasonable inferences from facts in the record when fashioning a sentence" so long as a preponderance of the evidence supports those inferences. *United States v. Hatcher*, 947 F.3d 383, 395 (6th Cir. 2020) (citation modified). Here, Shropshire admitted that he distributed substantial quantities of methamphetamine and fentanyl at a time. So his own testimony supported a reasonable inference that he trafficked significantly more drugs than what was included in his convicted conduct.

Second, Shropshire's effort to discredit the confidential informant from the state proffer falls flat. To challenge the government's proofs at sentencing, a defendant typically must "produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (citation modified). Shropshire pointed to the informant's identification of someone named "Aaron Choppy," or "Aaron Shoppee," and nicknamed "E" to undercut the reliability of the government's evidence. (Final Sent. Tr., R. 136, PageID 1172; Appellant Br., ECF 17, 4–5). But the district court found that other evidence showed

that Shropshire was known—"even among his own family members"—as "E." (Final Sent. Tr., R. 136, PageID 1177). Moreover, after observing that there was "no dispute [that] Mr. Shropshire is known by E," the district court asked for objections, and Shropshire offered none. (*Id.*). Shropshire points us to nothing to suggest that the factual bases for the district court's conclusions regarding his uncharged conduct were clearly erroneous. *See Small*, 988 F.3d at 257. We thus conclude that the district court did not abuse its discretion in factoring in this conduct as relevant to sentencing.

## IV.

For the foregoing reasons, we AFFIRM.